### The People *ex rel.* Fogalsonger *against* The Judges of the Court of Common Pleas of the County of Erie.

A MANDAMUS, tested May 9th, 1821, was directed to the defendants, reciting that an execution had issued out of the Common Pleas of Niagara, (now Erie,) on a judgment against Pierce, Raymond and Smith, administrators, &c. of C. Smith deceased, at the suit of the relator, tested November 10th, 1819, and returnable the 20th of that month, with an endorsement directing the sheriff to levy of the proper goods and chattels of the defendants $100, and interest from the 25th August, 1816; that the defendants at their February term, 1820, by rule, ordered this execution to be set aside for irregularity; and commanding them to vacate the rule, or show cause, &c. at, &c. on the first Monday of August, 1821.

To this the defendants returned a judgment before them in 1816, in favor of the relator against the defendants be-

*A judgment against executors or administrators, 'by confession, is conclusive proof that they have assets sufficient to satisfy it.*

*The plaintiff may after issuing a fi. fa. de bonis testatoris, vel intestatoris, and a return of a devastavit by the sheriff, issue a fi. fa. de bonis propriis, of course, and without the formality of a scire fieri in-*

quiry, or an action of debt suggesting a *devastavit.*

The different forms of judgment against executors and administrators, considered, according to the different pleas which they interpose, and the forms of execution upon these.

The rule on this head in *Lansing* v. *Lansing*, (18 John. 503,) explained and qualified.

If, on a *fi. fa. de bonis intestatoris*, issued upon a judgment by confession, against an administrator, he do not produce assets, this justifies the sheriff in returning a *devastavit*

lcw, Pierce, &c. as administrators of C. Smith, rendered on a *cognovit actionem*, in 1816; a *fi. fa.* for a balance due on that judgment of $100, tested August 28th, 1819, returnable the third Tuesday of November (then) next, *de bonis intestatoris.*

To this, the sheriff returned thus: "The within named G. Pierce, C. W. Raymond and A. Smith have no goods or chattels in my bailiwick, which were of the within named Cushman Smith, at the time of his death, to the value of the damages within mentioned, or any part thereof, but divers goods and chattels which were of the said Cushman, at the time of his death, to the value of the damages within mentioned, after the death of the said Cushman, came to the hands of the said defendants to be administered, which said goods and chattels the said defendants have, before the coming of this writ to me directed, eloigned, wasted and converted to their own use."

The return then set forth the *fi. fa.* tested and returnable as stated in the mandamus, reciting the first *fi. fa.* and return and commanding the sheriff to levy the damages, *de bonis propriis;* and that the Judges set this execution aside as irregular. General demurrer and joinder.

*J. Platt*, in support of the demurrer, contended, that after judgment by confession against administrators, and return of *nulla bona* and *devastavit* on a *fi. fa. de bonis intestatoris*, it was regular to issue a *fi. fa. de bonis propriis* without a *scire fieri* inquiry; and he cited the following authorities: 1 Saund. Rep. edited by Serjt. Wms. 219, note (8). Rast. Ent. 323, 326. Tidd, 929. 2 Archb. Pr. 133. *Rock* v. *Leighton*, (1 Salk. 310.) *Ramsden* v. *Jackson*, (1 Atk. 292.) *Ewing* v. *Peters*, (2 T. R. 685;) and *Platt* v. *Robins*, (1 John. Cas. 276.)·

*J. A. Collier*, contra, said nearly all the authorities would be found in 1 Saund. 219, note (8), cited on the other side. He would, however, refer the Court to the following in particular, which would show the difference between the ancient and modern practice: *Stubbs* v. *Rightwife*, (Cro. Eliz. 102.) 1 Saund. 305–6. Lill. Ent. 667. *Morfoot* v. *Chivers*, (2 Ld. Raym. 1395.) Com Di- 4 1-- -----

*Mounson* v. *Bourn*, (Cro. Car. 518.) Id. 527, S. C. *Proctor* v. *Chamberlaine*, (id. 564.) *Herne* v. ————, (1 Lev. 7.)

*Curia*, per SAVAGE, Ch. J. In considering this question, it is proper to look into the form of the judgment against an executor. This should be according to his liability. So far as this arises from pleading, I take the rule to be as follows : If he plead *ne unques executor*, or a release to himself, and the issue be found against him, the judgment is, that execution issue in the first instance, *de bonis testatoris si, et si non, de bonis propriis*, for both debt and costs ; and the reason is that he pleaded a plea which he knew to be false ; and thus, unnecessarily delayed the plaintiff. The rule laid down in *Lansing* v. *Lansing*, (18 John. 503,) is right as to that case ; but it is too broad, and should be accompanied with this qualification, that if the executor suffer judgment by default, or give a *cognovit actionem*, or plead any other plea but the two above named, and the issue be found against him, the judgment is *de bonis testatoris si*, for the whole debt or damages and costs, *et si non*, then, *de bonis propriis* for the costs, (*Mounson* v. *Bourn*, Cro. Car. 518. 6 Mass. Rep. 393, contra.) If the executor plead *plene administravit*, either general or special, and *nulla bona* or *nulla bona ultra*, and the plaintiff be satisfied of the truth of the plea, or, on issue joined, it be found for the defendant, then the judgment is for assets *quando acciderint*. (1 Saund. 336, n. (10.) *Bull* v. *Wheeler*, Cro. Jac. 647. *Bridgman* v. *Lightfoot*, id. 671.)

As to the regularity of the second execution issued in the Court below, the ancient practice of the King's Bench and common pleas differed. In the former, upon *nulla bona* and a *devastavit*, returned by the sheriff, an execution issued immediately *de bonis propriis*, (Tidd, 933, 1019. Dy. 210, n.) The better practice was to issue a *scire facias*, and obtain an award of execution *de bonis propriis*. The most usual practice was, not to have a *devastavit* returned, but *nulla bona* only, and then to sue a special *fi. fa. quod de bonis testatoris, &c, at si constare poterit quod devastavit, tunc de bonis propriis*. In the

NEW YORK,
May, 1825.

The People
v.
Iudges of Erie.

common pleas, the practice was to suggest a *devastavit* in the *fi. fa. de bonis testatoris ;* and direct the sheriff to in-· quire by a jury, whether a *devastavit* had been committed ; and if it was found by the inquisition, then a *scire facias* issued ; and unless a good defence was made, an execution *de bonis propriis* was awarded. In *Pettifer's case*, (5 Rep. 32,) the judgment of the Common Pleas was reversed by the King's Bench, upon the ground, that the sheriff was not responsible for a return of a *devastavit* upon an inquisition, whereas he would be, upon a return on his own responsibility. Afterwards, in *Mounson* v. *Bourn*, (Cro. Car. 527,) the practice of the Common Pleas was confirmed, and finally it became the practice of both Courts, on a return of *nulla bona* without a *devastavit,* to issue a *scire fieri* inquiry, upon which, if an inquisition was found against the executor, then he was warned to appear ; upon the return, he might traverse the inquisition, and if found against him, an execution *de bonis propriis* issued. An action of debt suggesting a *devastavit* is much more common in both Courts. In either mode of proceeding, the executor is entitled to the same defence ; but in neither can he avoid the consequences of pleading a false plea, confessing judgment, or suffering it to go by default. Either is an admission of assets, with this exception, that when *plene administravit* is pleaded, and found against the executor, he is liable to the extent only of assets found to be in his hands unadministered. (1 Saund. 219, *a.* 1 John. Cas. 276. 3 T. R. 685.)

It is an established principle, that if a party omit on the first opportunity, to plead matter in bar, he shall not be permitted to do so in a subsequent proceeding founded on the original action. (2 Str. 732. 3 T. R. 689. 1 John. Cas. 278.) Ld. Kenyon, in *Ewing* v. *Peters*, (3 T. R. 687–8,) thought the law hard, which made a previous judgment conclusive upon an executor, and pointed out a discrepancy between the law and the judgment, which is *de bonis testatoris*, while by this very judgment the executor is absolutely concluded ; and by another proceeding, either in *scire facias* or debt, he shall be charged personally. It was observed by Buller, J. that though the executor confess assets, yet

the judgment should be *de bonis testatoris ;* for though

the judgment be evidence of assets, yet there is no reason to levy on the executor's goods unless he hath wasted ; "and that being matter of fact, it must appear upon record, and judgment must be given thereupon, before his own goods can be affected." Although, therefore, the sheriff may return a *devastavit,* yet the return ought not to supply the place of an adjudication of the Court, and hence the necessity of a *scire facias* or a *scire fieri* inquiry, or an action of debt.

I confess, to my mind, this distinction appears more like a matter of technical formality, than of substance. In the present case, the defendant, by confessing a judgment admitted assets. By not producing those assets to the sheriff upon the *fi. fa. de bonis testatoris,* he has committed a *devastavit,* and justified the sheriff in his return. What defence can he make either to an inquisition or an action ? Certainly none. It is unreasonable, that the plaintiff should be driven to his *scire fieri* inquiry, upon which he gets no costs, unless the defendants appear. It is unreasonable that he should be put to an action to obtain what cannot possibly be denied him. This has always been treated by the Courts as a matter of practice, under their control, in relation to which, they may establish their own rules ; and it is undoubtedly so. That an execution *de bonis propriis* should go of course, at least upon this return of the sheriff, results from principles the most plainly established. Such a course unites convenience, expedition and the most perfect safety to the rights of parties, with the least expense. I feel myself impelled to yield to these considerations, and am accordingly of opinion, that the second execution was regular and that, consequently, judgment should be for the plaintiffs upon this demurrer.

Judgment for the plaintiffs.