MULHERAN'S EXECUTORS vs. GILLESPIE.

A *judgment for costs* in a *suit against executors* is not erroneous, although it does not appear on the face of the record that the costs were *specially* awarded by the court, and a direction given whether they should be levied *de bonis propriis* or *de bonis testatoris*.

A mere request to a party to become the surety of a third person in respect to the costs of a suit, without an offer to indemnify against risk, is not enough to render the person making such request an incompetent witness, if such suretyship be assumed.

The acceptance of a legacy will not operate as the extinguishment of a debt due from the testator to the legatee, unless the circumstances of the case are such as to warrant the conclusion that such was the *intention* of the testator.

ERROR from the New-York common pleas. Gillespie sued the executors of the last will and testament of Richard Mulheran, in an action of *assumpsit* for board and lodging, provided a servant of the testator, at his request. The deposition of one *James Dougherty*, the brother of the plaintiff's wife, was read in evidence by the plaintiff, in support of his claim. The plaintiff was a *non-resident*, and had been obliged to give *security for costs*, and from the cross-examination of the witness, as appeared by the deposition, one *Joseph Alexander* was the surety for the costs, and had become such surety at the request of the witness. The counsel for the defendant objected to the deposition as competent evidence, on the ground that *Dougherty* was interested in the event of the cause; that Alexander, having become surety for the costs at the request of Dougherty, the latter was bound by an implied promise to indemnify Alexander. The objection however was not sustained, and the defendants excepted. The defendants also insisted that the demand of the plaintiff was extinguished by the bequest of a legacy given by the will of the testator to the wife of the plaintiff, and the acceptance of

such legacy by the plaintiff; the facts of the case in refer-ence to which question are as follows : The demand of the plaintiff was for the board of the servant of the testator for the whole period of time accruing between June, 1823, and June, 1829, when *Mulheran*, the testator, died.    Previous to his death, to wit, on the 29th June, 1829, Mulheran made his will, and, among other dispositions of property, directed his executors to sell a house and lot in the city of New-York, and to divide the proceeds between his sister *Margaret* and *her daughters ;* and, by another clause, gave all his personal pro-perty to his niece Margaret Dunn, *on condition* that she should pay for the board of his old colored servant Nancy, should clothe her during her natural life, and at her decease decently inter her.    The house directed to be sold was sold for the sum of $3825 ; and on the 14th June, 1830, the sum of $719,44, (being the one fifth of the proceeds of the sale after deducting expenses,) was paid to the plaintiff and his wife, the wife of the plaintiff being one of the daughters of Margaret, the sis-ter of the testator.    The judge decided that the bequest and the acceptance thereof did not operate as an extinguishment or satisfaction of the plaintiff's demand, and so instructed the jury, who found a verdict for the plaintiff for $212.    The de-fendants applied to the common pleas for a new trial, upon the questions of law raised at the trial, and also upon the ground that the verdict was against evidence.    After argu-ment, the following opinion was delivered by the Hon.. JOHN T. IRVING, first judge of the New-York common pleas:

"The present application is to set aside the verdict on several grounds.    The *first* is, that *James Dougherty* was an interested witness, and his deposition ought to have been ex-cluded ; that he is impliedly responsible for the costs of the suit.    The witness, on his cross-examination, testified that he was not surety for the costs ; that one Joseph Alexan-der was such surety, and he admitted that he had spoken to Alexander concerning his becoming so.    On this testimo-ny, the objection was taken on the trial to this witness, and it was contended that he was directly interested in the event of the suit.    The interest, to disqualify, must be a direct and

positive interest, Norris' Peake, 210. In the present case, Dougherty not only was not the security for the costs, but he denied that he was at all liable for them. It appears to me that it would be carrying the doctrine of implied liability too far, to assume the position that he became in fact security to Alexander, merely because he asked him to befriend the plaintiff in regard to the costs, without offering to protect him against any risk. Even if an honorary obligation could be presumed to exist in such a case, such imaginary interest would be no objection. Norris' Peake, 232. The *second* ground is, that the verdict is not justified by the testimony. (Here the judge takes a review of the evidence, and comes to the conclusion that the verdict is supported by the testimony.) The *third* and most important ground on which the defendants rely is, that this debt is extinguished by a legacy which the late Mr. Mulheran bequeathed to the wife of the plaintiff. Mr. Mulheran, a few days before his death, made his will. bequeathing his property to his relatives. First, he bequeaths his house in Peck Slip to his niece Margaret Dunn, the wife of Timothy Dunn, one of the defendants. Second, he bequeaths the house No. 252, Water street, to his sister Margaret Dougherty and her daughters, (of whom Mrs. Gillespie is one,) share and share alike. Third, he directs that the residue of his real estate should be sold, and the proceeds thereof be divided equally among his heirs. Fourth, he bequeaths also to Margaret Dunn all his personal estate, on condition that she shall pay for the board of this slave and clothe her during her life, and likewise that she shall defray the expenses of Mr. Mulherans' funeral. Though it is a general rule, that a legacy which is greater than a debt is to be taken as an extinguishment of such debt, yet courts have leaned against this rule, where the circumstances of any case will not warrant the conclusion that such was the positive intention of the testator. Such is the doctrine laid down in 2 Atkyn's R. 301, and in *Cuthbert* v. *Peacock*, 2 Vernon, 524. There is some analogy between that case and the present. The testator in that case was indebted to his niece Frances in £100, for which she held his bond. He gave her

UTICA,
July, 1834.

Mulheran's
Executors.
v.
Gillespie.

by his will £300, and £200 apiece to her sisters, and after-
wards, by a codicil, the £200 legacies were reduced to £100
each, and afterwards he borrowed of his niece Frances £100
more.   The question was, whether the £300 should go in
extinguishment of the bond.   Lord Chancellor Cowper deci-
ded, that the construction of making a gift a satisfaction, had
in many cases been carried too far ; that it was reasonable in
such cases to admit of parol proof as to the testator's inten-
tion ; and, upon reading the proofs, he decreed the £300 leg-
acy over and above the debts ; for otherwise, he said, deduct-
ing the £200 pounds and interest due to her out of the £300,
there would not remain above £80, and she would be reduc-
ed to a less legacy than what was given to her sisters, contra-
ry to the testator's intention.   The same case is also reported
in 1 Salkeld, 155, and in which, too, a construction is given
to the will, that the testator, intended to be both just and kind ;
that a legacy was intended to be a gift, and if it was applied
to the payment of a debt, it ceased to be a gift.   In the case
of *Clark* v. *Sewell*, 3 Atk. 76, Lord Chancellor Hardwicke
observed : " It is true there are many cases which have car-
ried the doctrine of satisfaction a great way."   In later cases
the court have said this doctrine has been carried too far, *for
legacies naturally imply a bounty ;* and therefore, though the
courts of late have not altogether disavowed the doctrine of
satisfaction, yet they have been very inclinable to lay hold
of any circumstances to distinguish the later from former
cases—and such distinction the chancellor made in the case
he was considering.   Similar principles will also be found
laid down in Bacon's Abr. title Legacies, D. ; 1 P. Williams,
297 ; 2 Johnson's Cas. 98 ; *Cranmer's case*, 2 Salkeld, 508.
With regard to the present case, there is no doubt but that
Mulheran had placed this slave with Gillespie to board,
and was to give him some compensation ; the only question
was as to the amount, and whether the same had been satis-
fied.   The application in 1827 for the hundred dollars was
not strictly for a loan, but, according to Dougherty's testimo-
ny, was in consideration of this same board.   At least the ju-
ry might infer this from Mulheran's objection to the request.

That such debt did exist, and to the extent found by the verdict, is now established by the finding of a jury. Was this legacy intended to be a satisfaction of this debt? If it was, then Mrs. Gillespie will receive a less share than her sisters. The house No. 252 Water street, is to be sold, and the proceeds thereof divided, share and share alike, between Margaret Dougherty and her daughters. It certainly appears to me that Mulheran did not intend that she should not be equally benefitted by his bounty, with her sisters. When Mulheran died, it was alleged on the trial, that if he owed any debt, it was for this board alone; and if so, it may be presumable, from the language of the will, that he intended this debt and that which might arise in regard to his funeral, should be a charge upon the residuary estate; for, after disposing of his real estate, he devises all his personal to his niece Margaret Dunn, the wife of Timothy Dunn, on condition that she shall pay for the board of this slave, and shall clothe her during her life and pay her funeral expenses; and also the expenses attendant on Mulheran's funeral. It appears to me that this last clause shows that he considered himself bound to provide for this board; and although it may be construed to mean only perspective board, yet it is in some measure doubtful. I think, however, this provision may be used in aid of the construction which I have given in regard to the legacy to Mrs. Gillespie. It may also be further argued, against the position that the legacy was a satisfaction of this debt, that the debt was owing to Gillespie and the legacy was to his wife. It is true such legacy might enure to the benefit of the husband, yet the fact that the legacy was expressly given to the one may be urged as evidence that the intention to extinguish the debt was not present to the mind of the testator when he made his will. Upon the whole, I think that sufficient has not been shown to warrant my interfering with the verdict. The application, therefore, to set the same aside, must be denied, with costs."

The common pleas denying a new trial, judgment was entered upon the verdict for the amount found by the jury, and also for $54,85, costs, *to be levied of the goods and chattels of the*

UTICA,
July, 1834.

Mulheran's
Executors
v.
Gillespie.

*testator*, if the executors have so much thereof in their hands to be administered; and if not, then that $54,85, the costs, be levied of the *proper goods and chattels of the executors*. The defendants sued out a writ of error.

*C. O'Connor*, for the plaintiffs in error, insisted that Dougherty was an interested witness, and that his deposition ought to have been excluded by the common pleas; that the acceptance by the plaintiff of the legacy operated to extinguish or satisfy the demand for which he had obtained a verdict; and that, at all events, the judgment entered upon the verdict in *awarding costs* against the executors *individually* was erroneous; that, for aught appearing on the record, there ought not to have been judgment for costs even as against the estate of the testator. He insisted that unless it appeared on the record, by suggestion or otherwise, that the plaintiff, in a suit against executors, was entitled to costs, the presumption of law was, that they had been erroneoneously awarded.

*J. D. Wheeler*, for the defendant in error.

*By the Court*, SUTHERLAND, J.   The award of costs against the defendants *de bonis testatoris, et si non, de bonis propriis* is not error.   The statute 2 R. S. 90, § 41, provides that costs shall not be recovered against executors or administrators in any suit at law, to be levied of their property or of the property of the deceased, unless it appear that the demand on which the action was founded was presented within six months after notice by the executor or administrator, requiring all persons having claims against the deceased to exhibit the same; that its payment was unreasonably resisted or neglected, or that the defendant refused to refer the same, pursuant to the provisions of the statute; in which cases the court may direct such costs to be levied of the property of the defendants, or of the deceased, as shall be just, having reference to the facts that appeared on the trial.   If the action be brought in the supreme court, such facts shall be certified by the judge before whom the trial shall have been had.   There are certain cases, therefore, in which costs may be awarded against the es-

tate ; and, if that should prove deficient, against the executors personally ; and unless the facts and circumstances which are necessary in order to entitle the plaintiff to such a judgment *must appear* on the face of the record, such judgment is not erroneous. I know no way in which they can regularly be put upon the record, without the special order of the court. They might in that way perhaps be entered by way of suggestion after the requisite evidence had been produced to the court to justify such an order ; but they constitute no part of the issue between the parties. They are not set forth in the declaration, and of course are not traversed by the plea, or found by the jury : and the evidence at the trial, whatever it may be, does not appear on the record.

Costs in these cases are always ordered upon a special application to the court by way of motion. Where the action is brought in this court, and there has been a trial, the circuit judge is to certify as to the facts appearing upon the trial, in relation to the question of costs. In cases of cognovit and default, they must be shown by affidavit. This was the practice established by the court in *Potter* v. *Ely*, 5 Wendell, 74, *Palmer* v. *Palmer*, id, 91, and *Nicholson* v. *Showerman*, 6 id. 554, and which has been applied in many cases not reported.

If judgment for costs is entered up against executors without the order of the court, it is irregular, and, upon proper application will be set aside ; but it is not error.

All the other points presented by the bill of exceptions are considered by Judge Irving, in the opinion pronounced by him upon an application for a new trial. A copy of the opinion is attached to the case, and I entirely concur in the conclusion at which Judge Irving arrived.

Judgment affirmed.