## SUPREME ·COURT.

## [ No. 10. ]

### DAVID S. MILLS, respondent, agt. JOHN B. THURSBY and others, executors, &c., appellants.

The proceeding under § 376, &c., of the Code, by summons, against heirs, exe-
ecutors, or administrators, to show cause why judgment should not be en-
forced against the estate of a deceased judgment-debtor, is not to be treated
as an *action*. It is a proceeding in court, with most of the forms of an ac-
tion, but for only one *specific object*, viz.,⸵to enforce the original judgment
against the estate of the deceased judgment-debtor in the hands of the parties
summoned. *Costs* may be given, because, the judgment may be given in the
same manner as in an action; and in certain cases costs may be given against
executors in an ·action.
The Code probably intended that no *reply* should be put in, in this proceeding,
except when the answer introduced *new matter*.
Under this proceeding against executors, a judgment is not authorized as broad
as if it had been founded on a summons in an ordinary action, in which the
executors could be made personally liable for the whole amount of the judg-
ment, interests and costs.
Because, when the Code directed the summons to be, to show cause why judg-
ment should not be enforced against the estate of the deceased, in the defend-
ants' hands, it limited the objects of the proceeding to that purpose : when it
directed judgment to be given in the same manner as in an action, it meant,
in the same manner as in an action like this—instituted for a certain specified
purpose, and against executors; and when it gave an alternative, that the· ap-
plication of the property charged to the payment of the judgment might be
compelled by attachment, it shows the same intent, and that the judgment to be
entered was one charging certain property ("the property") with the payment.
A reference to the old law (which is fully examined) will lead to the same·con-
clusions. And it is not to be presumed that a great and dangerous innovation
is made in the *rights* of parties, in a law apparently intended only to facilitate
the remedy; and especially when, by the constitution, the codification of the
law of *rights* was to be entrusted to one set of commissioners, and the codifi-
cation of the law of *remedies* to another set.
In this case, the order for judgment in the court below recited the serving of the
summons, affidavit, answer and original judgment, and that Thursby died 23d
April, 1853, leaving the judgment wholly unpaid; and that it is still unpaid;
that the defendants are his executors; and thereupon *ordering* that the plain-
tiff have judgment against the defendants as executors, for the amount of said

Mills agt. Thursby and others, executors, &c.

judgment and interest; and also the sum of $100, as an allowance in addition to the costs to be adjusted; and that the property and estate of J. Thursby, deceased, be applied to the payment thereof; and that the plaintiff have execution therefor, with leave to apply to the court to compel the application of said property to the payment of the same by attachment, if necessary.

A final judgment is then entered on reading the pleadings and orders in the action, that the plaintiff recover of the defendants, as executors, the amount so ordered to be paid, and interest and costs; and that the property and estate of J. Thursby, deceased, be applied to the payment thereof; and that *the defendants pay the same* to the plaintiff, and that he have execution therefor.

*Held*, that this judgment is just as broad as if it had been founded on a summons in an ordinary action, in which the defendants could be made personally liable for the whole amount of the judgment, interest and costs.

The judgment was modified by directing that the plaintiff recover of the executors the amount so ordered to be paid, and interest, allowance and costs—($23,024.94)—to be levied, in due course of administration, out of the goods and chattels which were of the deceased at the time of his death, and which have since, or hereafter may, come to the hands of the executors to be administered; and that on the plaintiff's obtaining the proper order of the surrogate, to enforce payment of said sum by execution, with liberty to move for an attachment to compel the application of any property charged with the payment of the judgment.

Matters which always *belonged to the record*, and which is plain error on the face of the record—such as in this case a personal judgment against the executors—may be taken advantage of in the appellate court, where no exception is taken in the court below. But if illegal *evidence* is admitted at the trial, or an illegal *ruling* made, an *exception* must be taken, or the error is *waived*.

*New-York General Term, Feb.,* 1856.

MITCHELL, ROOSEVELT and CLERKE, *Justices.*

THE facts of this case will sufficiently appear in the opinion of the court.

N. DANE ELLINGWOOD, *for appellants.*
ALBERT MATHEWS, *for respondent.*

By the court—MITCHELL, Justice. The appeal is from a judgment against executors, founded on a judgment against their testator. The judgment appealed from did not bring in the executors as parties by a new action with a new summons and complaint, but by a new summons to show cause without any complaint, under the special provisions of § 376, &c., of the Code.

That part of the Code is substantially as follows:—In case of the death of the judgment-debtor after judgment, his heirs, &c., may, after three years from the granting of letters testamentary, or of administration, be summoned to show cause why the judgment should not be enforced against the estate of the deceased in their hands; and his executors or administrators may be so summoned at any time within one year after their appointment.

The summons is to describe the judgment, and to be served in like manner as the original summons. It is to be accompanied by the affidavit of the person subscribing it, that the judgment has not been satisfied to his knowledge, information, or belief; and it is to specify the amount due thereon. The party summoned may answer, denying the judgment, or setting up any defence which may have arisen subsequently. The plaintiff may demur or reply to the answer, and the party summoned may demur to the reply; and the issues may be tried, and judgment may be given in the same manner as in an action, and enforced by execution, or the application of the property charged to the payment of the judgment may be compelled by attachment, if necessary.

The Code does not treat this proceeding as an action: it directs the judgment to be given in the same manner as in an action; thus negativing the idea that there is an action; and for the same reason it makes special provisions for the form of the summons, and its service, and for the pleadings, and the mode of enforcing the judgment: it studiously avoids calling the parties plaintiffs and defendants; dispenses with any new complaint, and makes the summons, not for the payment of money or for relief, but to show cause. It is not an action for the recovery of money in its general sense, for that allows a personal judgment against the defendant: it is a proceeding in court with most of the forms of an action, but for only one specific object, viz., to enforce the original judgment against the estate of the deceased judgment-debtor in the hands of the parties summoned. Costs may be given, because the judgment may be given in the same manner as in an action; and in cer-

tain cases costs may be given against executors in an action. As it is convenient, these parties in this case may be described as plaintiff and defendants.

The summons requires the defendants to show cause why the judgment against the deceased, for $19,456.78, should not be enforced against the estate of the deceased in their hands, or why further relief should not be granted. The latter part, as to the further relief, may be discarded, as it is unauthorized by the Code. It allows the summons but for one thing, viz., to show cause why the judgment should not be enforced against the estate of the deceased in the hands of the defendants. Then follows the affidavit required by the Code.

The defendants answer the summons, denying that such judgment as was described in it was obtained against the deceased. No reply was put in, and probably the Code meant one to be put in, in this proceeding only when the answer introduced new matter.

At the trial the original judgment was produced in evidence— it was for $19,455.98, instead of $19,456.78. The judge disregarded the variance, and no exception was taken to his decision: if one had been taken, the variance could not have misled, and was properly disregarded. An order for judgment was then entered, reciting the service of the summons, affidavit, answer and original judgment; and that Thursby died 23d April, 1853, leaving the judgment wholly unpaid; and that it is still unpaid; and that the defendants are his executors; and thereupon ordering that the plaintiff have judgment against the defendants, as executors, for the amount of said judgment and interest; and also the sum of $100 as an allowance, in addition to the costs to be adjusted; and that the property and estate of J. Thursby, deceased, be applied to the payment thereof; and that the plaintiff have execution therefor, with leave to apply to the court to compel the application of said property to the payment of the same, by attachment if necessary.

A final judgment is then entered, on reading the pleadings and orders in the action, that the plaintiff recover of the defendants, as executors, the amount so ordered to be paid, and

interest and costs, and that the property and estate of J. Thursby, deceased be applied to the payment thereof; and that the defendants pay the same to the plaintiff; and that he have execution therefor.

This judgment is just as broad as if it had been founded on a summons in an ordinary action, in which the defendants could be made personally liable for the whole amount of the judgment, interest and costs. The ordinary summons would require the defendant, in such case, to answer the complaint in twenty days, or the plaintiff would take judgment for the sum specified therein. (*Code*, § 129.) No such summons is authorized in this case; and yet here is such a judgment as might be allowed in that case, viz., that the plaintiff recover of the defendants, as executors, the original judgment, interest and costs, and that the defendants pay the same, and that the plaintiff have execution therefor. The words "as executors" standing alone, do not limit the recovery to assets in their hands, but only have the effect to show that when they pay, they pay as executors, and are to be credited in their accounts accordingly: and the latter part of the judgment, "that the defendants pay the same," has no such qualification.

When the Code directed the summons to be to show cause why judgment should not be enforced against the estate of the deceased in the defendants' hands, it limited the objects of the proceeding to that purpose; when it directed judgment to be given in the same manner as in an action, it meant in the same manner as in an action like this, instituted for a certain specified purpose, and against executors; and when it gave an alternative, that the application of the property charged to the payment of the judgment may be compelled by attachment, it shows the same intent, and that the judgment to be entered was one charging certain property ("the property") with the payment.

A reference to the old law will lead to the same conclusions; and it is not to be presumed that a great and dangerous innovation is made in the rights of parties, in a law apparently intended to facilitate the remedy; and especially when, by the

constitution, the codification of the law of rights, was to be en trusted to one set of commissioners, and the codification of the law of remedies to another set.

By the common law, various preferences in payment were allowed in actions against executors; judgments, although not docketed, over bonds; bonds over simple contract debts; and in each class, the one first commencing his action, over others who had not been so expeditious.

The Revised Statutes gave the preference to a judgment only when it was docketed, and these according to their priority of docket, and abolished all preferences of bonds over simple contract debts, or of one class, by priority of action or judgment, over others of the same class. This plaintiff can claim no preference, as it does not appear that his judgment was docketed. (*See Term R.*)

By the common law, the judgment against an executor was never general, as against one personally liable, but was always special. Even if he pleaded *ne unques executor*, or a release to himself, and the issues were found against him, the judgment was, that the plaintiff recover a certain sum, to be levied of the goods and chattels of the testator in his hands, and if there were no such goods, then to be levied of his proper goods. For these two false pleas he might be subjected to this ultimate liability:—that liability, it is believed, is abolished since the Revised Statutes.

If he suffered judgment by default, or gave a cognovit, or pleaded any other plea than *ne unques executor*, or a release to himself, and that issue were found against him, the judgment was not against him personally for the debt, but it was still special, to be levied of the goods of the testator; and if these were not sufficient, then the costs, and not the debt, were to be levied of the executor.

If, on the execution issued on the last judgment, the sheriff returned that the executor had eloigned the goods of the testator before the coming of the writ to him, the executor would be liable, as on a devastavit, to the extent of their value, and a *fi. fa.* could then issue against him personally, to be levied of

his own goods and lands. (*See People ex rel. Fogalsanger* agt. *Judges, &c., of Erie,* 4 *Cow.* 445.)

There is nothing in the Revised Statutes, or in the Code, to dispense with the necessity of these special forms of judgment. It is proper that they should be continued in suits against executors as far as they are still applicable, and they are peculiarly proper where the proceeding is (by the law under which it is permitted) limited to a remedy against the estate of the deceased in the hands of the defendant.

The defendant is not barred by any setting up a want of assets. By the common law, the executor might plead that he had no assets, or not enough to satisfy the plaintiff's demand, after satisfying other demands having a preference; and the plaintiff either admitted this plea, and then could only take judgment of assets when they should hereafter be received, or he took issue on the plea, and then his judgment still was special as in other cases: it did not require any order of a surrogate, or any accounting before him, to authorize an execution on the judgment.

The Revised Statutes are express, that "no execution shall issue upon a judgment against an executor or administrator, until an account of administration shall have been rendered and settled, or unless on an order of the surrogate who appointed him. And if an account has been rendered, that execution shall issue only for the sum which shall have appeared on the settlement of such account to have been a just proportion of the assets applicable to the judgment. (2 *R. S.* 88, § 32.)

This does not interfere with the forms of judgments in the courts of law. It includes every judgment against an executor, and forbids the execution to issue against him in any case until there has been a final accounting before the surrogate, or a special order of that officer. That order may be obtained by any creditor, whether at large or with a judgment, and whether judgment were by default or after a trial upon the merits, at any time after six months from the granting of the letters testamentary, but not before; (*id. p.* 116, § 18;) and it may be obtained by a creditor who has obtained a judgment " after a trial

at law upon the merits," at any time after the judgment, al-
though within the six months. (*Id.* 116, §§ 20, 19.) The broad
language of § 18 seems to have been overlooked in the *dictum*
in *People* agt. *Judges Albany, &c.,* (9 *Wend.* 489.) It is upon
the application of a creditor, the payment of any debt or a pro-
portional part thereof, may be decreed at any time after six
months', &c. "A creditor" includes one who has obtained
judgment by default, as well as one who has no judgment; and he
is in no way deprived of any right to apply to the surrogate, or
exempted from the liability to do so, more than other judgment-
creditors against an executor, except that he cannot apply until
the six months have expired, and one who has obtained judg-
ment at law upon the merits, can apply at any time thereafter,
although within the six months. These latter sections do not
alter the effect of 2 *R. S.* 88, § 32, which forbids an execution
on a judgment against an executor in all cases, unless on the
order of the surrogate; or the executor's account has been
settled by the surrogate. (*See Winne* agt. *Van Schaick,* 9 *Wen-
dell,* 448.)

It might seem that, with such a system, it would be quite
unnecessary for an executor to put in any plea of no assets, or
of insufficient assets; and accordingly those two pleas are not
among those authorized by the Revised Statutes, although two
others somewhat akin to them are authorized. Section 31, of
2 *R. S.* 88, allows an executor to show, under a notice given
with his plea, that there are debts of a prior class unsatisfied,
or that there are unpaid debts of the same class with that on
which the suit is brought. It does not direct that the executor
then proceed and allege that he has not sufficient assets to pay
all these debts, or that he put the amount of assets in any way
in issue : for that question the surrogate is most fitted to deter-
mine, having the power to bring all the creditors before him to
attend the settlement of the account, and so at one time to de-
cide it so as to bind all. Then the section directs the judg-
ment, which is to be entered : it is to be rendered only for such
part of the assets in his hands as shall remain, after satisfying
the debts of the prior class, and as shall be a just proportion to

the other debts of the same class with that on which the suit is brought.

This describes the form of the judgment: it is to be substantially in the words mentioned, and as an old common law judgment would be in that case, and is not first to inquire what the amount of those assets were, (when that was not put in issue,) and then specify that precise amount in the judgment. Such a form would be inconsistent with the next section (32, above quoted) forbidding an execution on such a judgment, until the action of the surrogate was first had.

Section 31 also provides for the other case, where the plaintiff chooses to admit the defendant's plea of other debts to be paid first, or *pro rata*, and allows him (as the common law did) to take judgment for the whole or part of his debt, to be levied of future assets.

The Revised Statutes have not (in this view of the law) altered the necessity of the special judgment, as at common law, except that it prescribes a form requiring the payment of the debt to be out of the assets of the deceased; and does not, in that form, authorize the debt to be paid out of the property of the executor. The inference, therefore, is, that no such judgment now prevails in any case.

The costs may sometimes be payable by the executor personally, but that case is specially provided for.

Section 38 (37) of *R. S.* 618, is, that in suits against executors the costs shall be collected of the assets of the deceased, unless in cases provided for in § 41 of 2 *R. S.* 90. That section allows no costs against executors to be levied either of their property or of the property of the deceased, unless it appear that the demand was presented within a certain time, and its payment unreasonably resisted or neglected, or that the executor refused to refer it; in which cases the court may direct such costs to be levied of the property of the executor, or of the deceased, as shall be just—having reference to the facts as they appeared on the trial.

It might have been supposed that it was necessary that the judgment-record should show that the court specially inquired

into the facts which would authorize the allowance of costs; but the supreme court held otherwise in *Mulhaus'* executors agt. *Gillespie*, (12 *Wend.* 349, &c.)—it being presumed that the court would do its duty, and it not being usual to put in the record matters arising on motion. The result is, that the judgment in this case shows no error in awarding costs against the executors, as it might be that facts were presented to the judge at special term, which he considered as authorizing that disposition of the costs, nor in allowing some judgment in favor of the plaintiff rather than against him, but that the judgment should have been that the plaintiff, David S. Mills, do recover of the said John B. Thursby, &c., as executors and executrix as aforesaid, of the last will and testament of the said J. Thursby, deceased, the said amount so ordered to be paid, and interest, allowance and costs, amounting in the whole to the sum of $23,-024.94, to be levied, in a due course of administration, out of the goods and chattels which were of the said J. Thursby, deceased, at the time of his death, and which have come to the hands of the said John B. Thursby, &c., executors, &c., as aforesaid, to be administered, or which may hereafter come to their hands, as such executors, to be administered; and that on the said David S. Mills obtaining the proper order of the surrogate of the proper county, the payment of said sum of money may be enforced by execution; and that the said David S. Mills be also at liberty to move that the application of any property charged with the payment of this judgment, be compelled by attachment, if necessary.

In *Sanford* agt. *Granger*, (12 *Barb.* 403,) it is said that the appellate court ought to take notice of an objection apparent on the record, and which goes to the merits of the case, although not taken in the court below. The rule, if thus confined to what is strictly a part of the record, and not mere matter of exception and of evidence, is correct. If illegal evidence is admitted at the trial, or an illegal ruling there made, and no exception be taken to it, the error is waived. But those matters which always belonged to the record must be free from error, or the unsuccessful party may avail himself of

the objection in the higher court. If a certain proceeding is allowed only for the purpose of applying property of the debtor in the hands of third parties to the payment of the debt, and the creditor then takes a personal judgment, it is plain error on the face of the record; and as the defendant has no opportunity to object to the error in the judgment in the court below, he must be allowed to do so by appeal.

Still, as the record shows the whole extent of the error, and precisely how it should be cured, it is the duty of the court so to modify the judgment as to correct any error, not to reverse it entirely.

The judgment should be modified as above stated, without costs to either party on the appeal.