[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 54 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 55 
The first question which this case presents, is whether the order from which the appeal was taken is appealable. The code (section 11) gives an appeal to this court from "a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment."
I see no reason to doubt, that this is to be regarded as a special proceeding, and not an action. An action is defined by the code to be an ordinary proceeding in a court of justice. (§ 2.) This definition can hardly be held to embrace a proceeding, which is purely statutory and new; and which is conducted in no respect, according to the ordinary forms of the common law. There is neither process or pleadings or issue joined, as in ordinary actions. The whole proceeding is peculiar and unknown to our courts, except by special statutory provision, and is therefore aptly described by the term special proceeding. Besides, if it is not a special proceeding it must be a civil action. But section 127 of the code provides that, "civil actions in the courts of record of this state, shall be commenced by the service of a summons." This would seem necessarily to imply, that no proceeding not so commenced, can properly be deemed a civil action. That the order appealed from is final, and affects a substantial right, is not denied. It follows, therefore, that it is appealable. The question then is, was it correct? The *Page 56 
order required the appellant to accept the second deed and pay the purchase money. It cannot, I think, be successfully maintained, that the covenants contained in that deed are binding upon the infant heirs, for two conclusive reasons. First: Assuming that the court had power, in an application under the statute to compel the specific performance by heirs of the contract of their ancestor, to decree that infant heirs should execute a conveyance containing personal covenants, a question I do not intend to pass upon here; still, there could be neither equity nor propriety in requiring them to assume obligations, beyond such as would have legally devolved upon them, in case the contract had been carried into execution by the ancestor himself. If they are to be bound by covenants at all, it should obviously be to the same extent only, as they would have been bound by the covenants of the ancestor, had the deed been executed by him; a liability which would of course be limited by the amount of their inheritance from the ancestor, and should be so expressed in the deed executed by the heirs. A second and equally conclusive reason why the infant heirs could not be bound by the covenants in this deed, is, that there was no decree or order of the court requiring them to execute a deed with covenants. They clearly had no power to bind themselves, nor their guardian ad litem to bind them by voluntary covenants, entered into without the authority or direction of the court.
If, therefore, the appellant Seeley had a just right to insist upon a deed containing covenants on the part of the heirs; it is clear that he was not bound to accept the deed in question. But the order of the sixth of June, 1848, which directs the execution of the deed, recognizes no such right, and imposes upon the heirs no such obligation. It simply directs a conveyance by the heirs of their interest in the premises. Unless, therefore, the appellant can look beyond that order, he can now only require a naked conveyance without covenants.
Hence it was insisted upon the argument by the counsel for the appellant, that the order of the sixth of June was in its *Page 57 
nature interlocutory, and not final, and therefore open to review upon this appeal. But I apprehend, that this position can hardly be sustained. That order disposed of every question before the court and fully settled the rights of the parties; nothing was reserved, nothing left to be adjudicated. There was no occasion for any further application to the court unless one or the other of the parties should refuse to comply with the order. It was, therefore, in every sense a final order, by which the parties, unless they appealed, must be held to be absolutely concluded. So it was viewed by the justice at the special term in October: but he at the same time expressed the opinion, that the order was defective in one respect, viz: in omitting to prescribe the form of the deed, and to require the heirs to execute a conveyance with full covenants, and he suspended the decision of the motion before him, to give the heirs an opportunity to prepare and tender such a deed.
The conveyance, which the order appealed from required the appellant to accept, was executed and tendered in pursuance of this intimation at special term. But it is clear, that the respondent's case has not been strengthened by the addition of the covenants in the deed. Those covenants, at least so far as the infant heirs are concerned, being as has been already shown utterly void. That deed therefore is to be viewed precisely as it would be with those covenants stricken out, and the whole case upon this appeal turns upon the question, whether the deed in question is properly executed, and whether independent of the covenants, it contains all that is requisite to make a perfect conveyance, in conformity with the order of the sixth of June, 1848. The covenants, though inoperative and void as to the infant heirs, do not vitiate the residue of the deed. I think the deed is in form sufficient, notwithstanding the void covenants, but the difficulty lies in the manner of its execution. The direction in the order is as follows: "the said deed of conveyance to be executed by Josiah S. Mitchel, the guardian ad litem, in *Page 58 the name and behalf of the above named infant children of the said Joseph R. Hyatt, deceased."
The proper mode of executing a deed pursuant to such a direction would be, for the guardian to subscribe the name of the infant, and then add "by J.S.M. his guardian ad litem;" and so it was held in the matter of Windle, (2 Edw. Ch. R. 585.) The precise form, however, is not essential, but the order of the court must be followed in substance, at least. The order is, that the deed be executed by the guardian in the name of the infants. Instead of this, the infants have themselves executed in their own names. It appears no where upon the face of the deed, except in the recital of the proceedings to compel a specific performance, that any of the grantors were infants, or that they had a guardian ad litem. In naming the parties to the deed who convey, there is no allusion to the guardian, nor to the fact that any of them were infants. That portion of the order which directs the guardian to convey in the name of the infants is not referred to in the recital, or in any part of the deed. The name of the guardian appears to the deed underneath the names of four, and over that of one of the infants for whom he was guardian, with nothing whatever to distinguish it from that of any of the other grantors. Perhaps all these omissions and irregularities may not invalidate the deed. But if it be admitted, that by resorting to inferences, and by connecting the deed with the previous proceedings, its true character may be ascertained and its validity as against the infant heirs established, which I do not regard, however, as by any means clear; still neither the petitioners nor the heirs had any right to impose upon the appellant, nor was he bound to accept a title embarrassed by such a question. As he was deprived by the order of the sixth of June of all claim to covenants from the heirs, he had at least a right to a deed upon the due execution of which, no cloud should rest. Courts have always, for obvious reasons, been more rigid in exacting a due observance of formalities in respect to instruments under seal, and especially such as convey the title to lands, than to those of a mere commercial *Page 59 
character, whose existence and functions are comparatively ephemeral.
There seems to have been nothing in the way since the order of the 6th of June, 1848, of compelling a specific performance by the appellant of the contract in question, but the omission to execute a proper deed pursuant to the directions of that order. If the deed first tendered is to be regarded as in all respects perfect, it could not of course avail the respondent here; because the order appealed from required the appellant to accept the second deed. But the first deed was defective in not beingexecuted in the name of the infants as required by the order. The guardian signed his own name, adding "Guardian, c." but omitted to subscribe the names of either of the infants. In all other respects, that deed was such a one as the order directed, and contained all that the appellant had a right to require under the order, and the defect in the manner of its execution may not have been fatal, as the deed purports in its commencement to be made by the infants by their guardian ad litem. It is unnecessary, however, to pass upon this question here.
The order appealed from must for the reasons given be reversed.