By the Court,

Monell, J.
I am unable to subscribe to the views of the learned chief justice, that the title offered to the plaintiff was insufficient, and so doubtful that he had a right for that reason to disaffirm the sale and recover his deposit. If the action had been on the equity side of the court to compel Reilly to take the title, I should express any opinion of its sufficiency with much hesitation. The difficulties suggested by "the chief justice would, of themselves, cause me to hesitate, and perhaps to doubt. But the action is at law to recover back the deposit upon a rescission of the contract of sale. And I think the error of the learned judge was in applying the rule in equity instead of the rule at law to a question involving the sufficiency or goodness of a title to real property. The court, in the exercise of its equity powers, will not compel an unwilling purchaser to take a doubtful title.
Much discussion has been had as to what is a doubtful title. If the court is fully informed of the facts, it must know whether a title is good or bad. If the facts are not fully disclosed, it may with propriety doubt. It is, however, with practical certainty and practical doubts that the court must deal. In the language of Lord Hardwicke, (Lyddal v. Weston, 2 Atk. 19,) “ the court must govern itself by a moral certainty, for it is impossible, in the nature of things, there should bo a. mathematical certainty of a good title.” Where the doubt of the sufficiency of the title is reasonable and practical, the court in its discretion will excuse performance by the purchaser.
The rule, however, at law, is quite different. There the party disaffirming the contract must satisfy the court that the title is absolutely bad, and the court must decide that it is absolutely bad, before the party can recover. A merely doubtful title will not do. (Romily v. James, 6 Taunt. 263.)
The question then arises, whether upon the facts in this, case the title offered by the defendant is had, That is the question to be decided in this case.
*592 I pass over all the objections to the title, except three, being satisfied, for the reasons so well expressed by the chief justice, that they are really groundless.
The first objection I shall notice is, that it is doubtful whether the Supreme Court acquired jurisdiction of the proceeding to effect a sale of the infants’ interests. The power of the court to authorize the sale of the real, property of infants is derived from the statute, and is not inherent in the court; hence the statute must be strictly followed, and its terms fully complied with.
The language of the statute (2 R. S. 194, § 170) is, “ Any infant seized of any real estate * * * may by his next friend * * apply to the court. * * for the sale,” &c.
The petition before us was by Isabella R. Cochran, &c. infants, over the age of fourteen years, and Caroline Ella Cochran, &c. infants, under the age of fourteen years, “ by Bayard Clark, * * their uncle and next friend, and only male relative of full age.” The petition is signed by Bayard Clark, without any addition to his name, of next friend, as respects the infants over the age of fourteen years, and by all the infants in person.
There is nothing in the statute prescribing the manner in which an infant may apply to the court. And I see no reason why he may not, by his next friend, apply orally. The courts have established rules on this- subject, but they are mere rules, which the court may, in its discretion, at any time disregard. (Dicas v. Brougham, 6 Car. & Payne, 248.) The late Court of Chancery, at an early day, adopted a rule on this subject, which subsequently became and continued the 158th standing rule of that court, and which required the application to be made by petition, prescribing its contents. But there is no doubt that the court may, in a given case, depart from the rule and allow the application to be made in some other way, and I can see no reason why it may not be made orally, although it probably would not be wise to allow such a practice. The material question is, did the infants apply by their next friend ? The form of the application is of no consequence, if the substance was there, The description in the petition is clear : “ The *593 petition of, &c. by their next friend.” No one can doubt, I think, that this was the application of the infants, by their next friend, as required by the statute. And, the Supreme Court having determined that it was sufficient in substance, the mere departure from some prescribed form or rule of court would not affect the jurisdiction of the court over the application. The case of Hyatt v. Seeley, (11 N. Y. Rep. 52,) is not opposed to this view. In that case, the order authorizing the sale directed the deed to be executed by the guardian “ in the name of the infants.” It was executed by the guardian with the designation of guardian, &c. without naming the infants in the body pf the deed or elsewhere. But the court intimate, that if the deed had purported, in its commencement, to be made by the infants, it would have been sufficient. Besides, that was an application to the equity side of the court to compel the purchaser to take the title.
Second. It is objected that the application by Bayard Clark, as the next friend of the infants, was improper. The objection, however, was chiefly that he was a creditor of the infants. That was not an adverse interest, and nothing short of an interest in opposition to the interests of the infants, in the property sought to be sold, would disqualify even a special guardian. The statute does not tell us who is the next friend, nor how he is to be selected or appointed. The 158th rule of the late Court of Chancery said some relation or friend might make the application ; and in one case (Matter of Whitlock, 32 Barb. 48,) the mother was deemed a suitable and proper person. In this case the next friend is described as being their uncle and only male relative of full age. I cannot doubt that so near a blood relation is the next friend within the meaning of the statute,
Infants being non sui juris, cannot act for themselves, and the policy which requires the interposition in their behalf of a next friend is fully met by the presumption that the person selected will, from motives of love and affection, be desirous to promote and preserve their interest; and the next friend may therefore well be considered the near friend. I can but believe *594 that any one may he the next friend ; hut it is the duty of the court, as the universal guardian of the persons and estates of infants, to scrutinize closely the qualifications and disinterestedness of those who present themselves as such.
The Supreme Court having entertained the application, we must presume that they were satisfied that the next friend was a suitable person to apply for the infants. And, as-the statute does not disqualify him, I cannot see how any question can seriously be raised against the validity and regularity of the proceedings in that respect.
Third. The objection that the special guardian of the infants entered into a contract of sale conjointly with the adult owners, and that the deed tendered to the plaintiff was in like manner executed by the guardian, jointly with the other owners, seems to me to have no foundation. The guardian .could neither agree to sell, nor could he convey any other than the infants’ interests. The order authorized that, and no more, and to that extent and no further did the guardian agree to sell, or did he convey. That other parties, owning other interests, joined in the same contract and deed, could not deprive either instrument of its binding effect upon -all concerned.
In looking throughout these proceedings, I. have not been able to detect any departure from the statute. There has been, it seems to me, not only a substantial but a literal compliance with its terms. If there was any departure, it was from some rule o# prescribed form of court, unessential (except as preserving uniformity in practice,) and subject to change at any time, but in no way impairing the validity of the proceeding.
The contract provided that if the title should be found to be “ insufficient,” the deposit should be returned. Eo greater signification can be given to the word “ insufficient ” than its natural meaning, pamely, that the title should be adequate, and such as should suffice and be equal to the end of vesting a good title in the purchaser. The parties doubtless meant that, if the title was defective, and the purchaser would not get a good title, the contract should be at an end- But they did not *595 mean, nor are the words used capable of the meaning, that the title should be absolutely and mathematically proven to be good.
In any aspect I can view the case, I cannot conclude that the title is bad, or even that there is, as was said by Baron Alderson, (Cattel v. Corrall, 4 Y. & C. Ex. 237,) “ a reasonable, deoent probability of litigation ” about it.
I am, therefore, of opinion that the conclusion of the chief justice was erroneous, and that the judgment should be reversed, and a new trial granted, with costs to abide the event.