L. C. DOW as Administrator, and Josephine Lillie, as Administratrix, of the Estate of Eulalie Lillie, Deceased, Karl W. Kendall, and First National Bank of Marion, Iowa, a Corporation, v. GEORGE L. LILLIE, as Administrator of the Estate of Eulalie Lillie, Deceased.

(— L.R.A. (N.S.) —, 144 N. W. 1082.)

**Ancillary administration — county court — district court — appealable orders — substantial rights.**

1. An order of the district court which confirms an order of the county court in an ancillary administration, refusing to grant a petition filed by the principal administrator under the direction of the principal court for the sale of real estate in North Dakota, and the transmission of the proceeds thereof to such principal court for the payment of the debts there provided, is a final order affecting a substantial right made in a special proceeding, and is appealable as such under § 7225, Rev. Codes 1905.

**Appeal — depositions — stipulations — evidence — statement of the case.**

2. In the case of such an appeal, and where the trial in the district court was had upon a stipulation of facts and depositions which were included in the certified record on appeal from the county to the district court, and no oral evidence was taken in the latter court, no statement of the case is necessary, and the supreme court can take into consideration the evidence as presented by the depositions and the stipulations.

**Estates — claims against — administration — orders of — rejecting claims — not res judicata.**

3. In allowing or rejecting a claim, an administrator acts merely as an auditor, and his refusal to allow such claim is not res judicata.

**Claims — proof of — jurisdiction.**

4. Where there is both a principal and an ancillary administration, cred-

itors may prove their claims in either jurisdiction, and it is not always necessary that they should be proved in both.

**Decedent's property — debts must be first paid — heirs — estate or interest.**

5. Under the Code of North Dakota the heirs or devisees have no right to a decedent's property until his debts are paid. The creditors are the first preferred parties in interest, and until satisfied heirs or legatees have no enforceable interest.

**Nonresidents — estates — administration — proof of claims — debts — real estate — sale of — proceeds to pay debts.**

6. Where a resident of Iowa died in that state, and administration of her estate was had, and on such administration a creditor proved his claim and said claim was allowed by the court, but there were not assets in such jurisdiction sufficient to pay the same, and an ancillary administration was had in North Dakota, where there was real estate belonging to the estate, but no money or personal property, and there were no debts, and a petition was filed in said ancillary administration by the administrator in the principal administration under the direction of said principal court, asking for the sale of the real estate in North Dakota and the transmission of the proceeds to said principal court for the payment of the debts there proved and allowed, *held*, that said petition should have been granted, even though such debts had not been proved in North Dakota in the said ancillary administration.

(Opinion filed January 8, 1914.)

Appeal by petitioners from an order of the District Court of Bottineau County, *Burr,* J., confirming an order of the County Court of said county denying a petition filed by the administrator in and under the direction of the court of the principal administration in the state of Iowa, and in an ancillary administration in said County Court of Battineau County, North Dakota, asking for the sale of real estate in North Dakota, and the transmission of the proceeds thereof for the payment of debts proved and allowed in said principal administration.

Reversed and remanded.

Statement by BRUCE, J.

This litigation was started by the filing of a petition in proceedings pending in the county court of Bottineau county, North Dakota, relating to the administration of the estate of Eulalie Lillie, deceased. The petition was filed by the administrator in the principal administration of said estate held in the district court of Linn county, Iowa,

26 N. D.—33.

such administrator having been directed to file the same by the presiding judge of the Iowa court. The petition alleged the principal administration in Iowa, the allowance of claims therein far in excess of the assets of said estate, and prayed the county court of Bottineau county, North Dakota, to direct the sale of the lands located in North Dakota, and to transmit the proceeds to the administrator of the estate in Iowa, to be used in paying the debts there proved. The petition was heard by the county court of Bottineau county and denied. An appeal was seasonably taken from this order to the district court of Bottineau county. That court heard the proceedings upon the record which was made in, and which was sent up by, the county court, and on a stipulation of facts. The record of the county court included the depositions on which the cause was originally tried. The district court affirmed the order of the county court in all respects, and an appeal was taken from this order to the supreme court. The facts as disclosed by the record and the stipulations are as follows:

Eulalie Lillie at the time of her death was a resident of Marion, in the state of Iowa. On or about December 2, 1908, George L. Lillie, the respondent, filed a petition in the district court of Linn county, Iowa, asking that the estate of Eulalie Lillie be admitted to probate, and in the proceeding thus started an order was made appointing L. C. Dow and Josephine Lillie, two of the petitioners above named, as administrators. During her lifetime the said Eulalie Lillie had given to Karl W. Kendall notes aggregating $12,500. On April 27, 1909, these notes, together with other claims, were proved against the estate in Iowa, and were allowed by the court, and are now unpaid. The decedent also during her lifetime gave to petitioner the First National Bank of Marion, Iowa, her notes to the amount of $2,000. On April 23, 1909, these notes were also proved against the Iowa estate, and were allowed by the court in the sum of $1,650, which sum is still unpaid. Decedent left no real estate in the estate of Iowa and only $200 in personal property. Decedent left no personal property in North Dakota, but did leave real estate which was appraised in the probate proceedings at $14,400. During the month of May, 1911, and after the approval and allowance of the claims of the petitioners Karl W. Kendall and First National Bank of Marion, Iowa, in the probate proceedings brought in the district court of Linn county, Iowa

(which court had probate jurisdiction), a petition was filed in the county court in and for Bottineau county, North Dakota, asking that George Lillie be appointed administrator of the estate of Eulalie Lillie, situated in the state of North Dakota, and such proceedings were had thereon that George L. Lillie was duly appointed and known as the administrator of such estate. On the 7th day of June, 1910, and on the 20th day of June, respectively, the said claims of the petitioners Karl W. Kendall and First National Bank of Marion, Iowa, for $14,510.93 and $1,650, respectively, were presented and filed with George L. Lillie, administrator in the county of Bottineau, North Dakota, and the judge of said court thereupon indorsed thereon the date of their filing. No other or further action was ever taken by the said administrator, George L. Lillie, or by the said county court in reference thereto. On or about the 24th day of February, 1911, an order was made in the district court of Linn county, Iowa, on an application by the appellants and petitioners Karl W. Kendall and First National Bank of Marion, Iowa, which prayed that the administrators of the decedent's estate in Iowa might be directed to apply to the county court of Bottineau county, in North Dakota, for an order directing the administrator of the North Dakota estate to institute proceedings to sell the land in North Dakota, and to remit the proceeds of such sale to the administrators in Iowa. No claims have been proved against the estate in North Dakota, and the funds in the hands of the administrators in Iowa are entirely inadequate to pay the claims of the petitioners. Appellants Karl W. Kendall and First National Bank of Marion, Iowa, are both residents of Marion, Linn county, Iowa.

This appeal is taken from the order of the district court affirming the order of the county court. There is no demand for a trial *de novo,* nor is there any settled statement of the case, nor any specifications of fact that the appellants desire this court to review.

*Engerud, Holt, & Frame,* for appellants.

Claimants had two concurrent remedies. They could prove their claims in the Iowa court, or could proceed to do so in the North Dakota court, or in both courts. Their claims having been proved in the Iowa court, they were entitled to have them paid out of decedent's estate wherever located. Rev. Codes 1905, §§ 8225 to 8228; Cowden v.

Jacobson, 165 Mass. 240, 43 N. E. 98; Miner v. Austin, 45 Iowa, 221, 24 Am. Rep. 763; Lawrence v. Elmendorf, 5 Barb. 73; Re Gable, 79 Iowa, 178, 9 L.R.A. 218, 44 N. W. 352.

The right of claimant to participate in the assets of the estate in North Dakota is not *res judicata*. Chambers v. Chambers, 38 Or. 131, 62 Pac. 1013; Willis v. Marks, 29 Or. 493, 45 Pac. 293; Preston v. Knapp, 85 Cal. 559, 24 Pac. 811; Cowden v. Jacobson, 165 Mass. 240, 43 N. E. 98; Wilson v. Hartford F. Ins. Co. 19 L.R.A.(N.S.) 553, 90 C. C. A. 593, 164 Fed. 817; Miner v. Austin, 45 Iowa, 221, 24 Am. Rep. 763; Rev. Codes 1905, §§ 8225 to 8228.

The property in North Dakota should be sold and the proceeds sent to the Iowa court. Re Gable, 79 Iowa, 178, 9 L.R.A. 218, 44 N. W. 352; Pisano v. B. M. & J. F. Shanley Co. 66 N. J. L. 1, 48 Atl. 618; Lewis v. Grognard, 17 N. J. Eq. 425; Pratt v. Douglas, 38 N. J. Eq. 516; Childress v. Bennett, 10 Ala. 751, 44 Am. Dec. 503.

The function of ancillary proceedings is to gather in the assets of the estate within its jurisdiction, pay local claims, and transmit the balance to the domiciliary estate. First Nat. Bank v. Warner, 17 N. D. 81, 114 N. W. 1085, 17 Ann. Cas. 213; St. John v. Lofland, 5 N. D. 143, 63 N. W. 930; Palmeteer v. Tilton, 40 N. J. Eq. 555, 5 Atl. 105; Lobdell v. Lobdell, 36 N. Y. 333.

When the reason for a rule does not exist or enter into the controversy, the rule itself ceases to operate or govern. Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088; McCartin v. Traphagen, 43 N. J. Eq. 323, 11 Atl. 156; Dolan v. Dolan, 89 Ala. 256, 7 So. 425; Kroh v. Heins, 48 Neb. 691, 67 N. W. 771; Kempton v. Bartine, 59 N. J. Eq. 149, 44 Atl. 461; Pyle v. Pyle, 158 Ill. 289, 41 N. E. 999; Wright v. Jackson, 59 Wis. 569, 18 N. W. 486; Dick v. Williams, 130 Pa. 41, 18 Atl. 615; Messimer v. McCrary, 113 Mo. 382, 21 S. W. 17; Magemau v. Bell, 13 Neb. 247, 13 N. W. 277; Glover v. Gentry, 104 Ala. 222, 16 So. 38; Harpending v. Daniel, 80 Ky. 449.

Whether the administration be a principal or auxilliary one, the rights of the parties remain the same. Fretwell v. McLemore, 52 Ala. 134; Wright v. Phillips, 56 Ala. 82; Hamilton v. Levy, 41 S. C. 374, 19 S. E. 612; Dawes v. Head, 3 Pick. 128.

A decedent's property becomes a trust fund for the payment of his debts wherever they exist. The location of such debts creates no

preference rights. Rev. Codes 1905, §§ 5187, 8093, 8096, 8225–8228, 8134; Wright v. Phillips, 56 Ala. 69; Miner v. Austin, 45 Iowa, 221, 24 Am. Rep. 763; Lawrence v. Elmendorf, 5 Barb. 73; Goodall v. Marshall, 11 N. H. 95, 35 Am. Dec. 472; Hamilton v. Levy, 41 S. C. 374, 19 S. E. 612.

The discretion mentioned in § 8225 of our Code means a *legal* discretion, and does not confer authority upon the court to act arbitrarily. Dawes v. Head, 3 Pick. 145.

The rules of comity between states and courts should be adopted and followed, whenever they are not in conflict with the true intent and spirit of statute law, in order that justice may be done. Re Gable, 79 Iowa, 178, 9 L.R.A. 218, 44 N. W. 352; Davis v. Estey, 8 Pick. 475; Dawes v. Head, 3 Pick. 128; Fay v. Haven, 3 Met. 109; Dawes v. Boylston, 9 Mass. 337, 6 Am. Dec. 72; Jennison v. Hapgood, 10 Pick. 77; Stevens v. Gaylord, 11 Mass. 256; Probate Ct. v. Kimball, 42 Vt. 320; Miller's Estate, 3 Rawle, 312, 24 Am. Dec. 345; Goodall v. Marshall, 11 N. H. 88, 35 Am. Dec. 472; Barry's Appeal, 88 Pa. 131; Young v. Wittenmyrer, 123 Ill. 303, 14 N. E. 869; Gravillon v. Richards, 13 La. 293, 33 Am. Dec. 563; Gaines's Succession, 46 La. Ann. 252, 49 Am. St. Rep. 324, 14 So. 602; Williams v. Williams, 5 Md. 467; Wright v. Gilbert, 51 Md. 146; Parsons v. Lyman, 20 N. Y. 103; Despard v. Churchill, 53 N. Y. 192; Hamilton v. Levy, 41 S. C. 374, 19 S. E. 612; Wright v. Phillips, 56 Ala. 82; Fretwell v. McLemore, 52 Ala. 134; Childress v. Bennett, 10 Ala. 751, 44 Am. Dec. 503; Lawrence v. Elmendorf, 5 Barb. 73; Cummings v. Banks, 2 Barb. 602; Lewis v. Adams, — Cal. —, 8 Pac. 619; Apple's Estate, 66 Cal. 432, 6 Pac. 7; Miner v. Austin, 45 Iowa, 221, 24 Am. Rep. 763; McCully v. Cooper, 114 Cal. 258, 35 L.R.A. 492, 55 Am. St. Rep. 66, 46 Pac. 83; Greenwalt v. Bastian, 10 Kan. App. 101, 61 Pac. 513; Doss v. Stevens, 13 Colo. App. 535, 59 Pac. 67; Shegogg v. Perkins, 34 Ark. 117; Mitchell v. Cox, 28 Ga. 32; Spraddling v. Pipkin, 15 Mo. 118; Joy v. Elton, 9 N. D. 444, 83 N. W. 875.

The administrators in Iowa were the proper parties to bring these proceedings. State ex rel. Security Trust Co. v. Probate Ct. 67 Minn. 51, 69 N. W. 609, 908; Strauss v. Phillips, 189 Ill. 9, 59 N. E. 560; Moore v. Luther, 153 Mich. 206, 18 L.R.A.(N.S.) 149, 126 Am. St. Rep. 479, 116 N. W. 986, 117 N. W. 932; Wilson v. Hartford F. Ins.

Co. 19 L.R.A.(N.S.) 553, 90 C. C. A. 593, 164 Fed. 817; Fields v. Mundy, 106 Wis. 383, 80 Am. St. Rep. 39, 82 N. W. 343.

*Noble, Blood, & Adamson,* for respondent.

The so-called order from which this appeal is taken is not an appealable order. It is merely one of the conclusions of law reached by the trial court. Re Weber, 4 N. D. 119, 28 L.R.A. 621, 59 N. W. 523; Prondzinski v. Garbutt, 9 N. D. 244, 83 N. W. 23; Field v. Great Western Elevator Co. 5 N. D. 400, 67 N. W. 147; Re Peterson, 22 N. D. 480, 134 N. W. 752.

The debts of a decedent cannot be made a charge against the property until the conditions of the statute have been fully met. N. D. Rev. Codes, §§ 8093, 8097, 8099, 8103, 8105, 8108.

Where action is brought on a rejected claim after three months, its rejection by the administrator can be pleaded in bar, because the limitation had run. Boyd v. VonNeida, 9 N. D. 337, 83 N. W. 329; Farwell v. Richardson, 10 N. D. 36, 84 N. W. 558; Mann v. Redmon, 23 N. D. 508, 137 N. W. 478.

Before a claimant can be exempted from the operation of the statute, he must show that he is excepted by its terms. Roaf v. Knight, 77 Iowa, 506, 42 N. W. 433; Morgan v. Hamlet, 113 U. S. 449, 28 L. ed. 1043, 5 Sup. Ct. Rep. 583; Crenshaw v. Carpenter, 69 Ala. 572, 44 Am. Rep. 539; Van Steenwyck v. Washburn, 59 Wis. 483, 48 Am. Rep. 532, 17 N. W. 289; Barry v. Minehan, 127 Wis. 570, 107 N. W. 488; Winter v. Winter, 101 Wis. 494, 77 N. W. 883.

The administration and distribution of the real property in question are governed by the laws of North Dakota, where said property is located. Wilson v. Hartford F. Ins. Co. 19 L.R.A.(N.S.) 553, 90 C. C. A. 593, 164 Fed. 817; Fields v. Mundy, 106 Wis. 383, 80 Am. St. Rep. 39, 82 N. W. 343.

Claims not filed and treated here as provided by statute cannot be enforced. Winter v. Winter, 101 Wis. 494, 77 N. W. 883; Carpenter v. Murphey, 57 Wis. 541, 15 N. W. 798; Austin v. Saveland, 77 Wis. 108, 45 N. W. 955; Eingartner v. Illinois Steel Co. 103 Wis. 373, 74 Am. St. Rep. 871, 79 N. W. 433.

The local administrator acts wholly under and by the authority of the statutes of this state, and the acts of a foreign court of administration are not binding on him. Stacy v. Thresher, 6 How. 57, 12 L. ed.

342; McLean v. Meek, 18 How. 16, 15 L. ed. 277; Talmage v. Chapel, 16 Mass. 71; McGarvey v. Darnall, 134 Ill. 367, 10 L.R.A. 861, 25 N. E. 1005; Story, Confl. L. § 522; Freeman, Judgm. § 163; Smith v. Goodrich, 167 Ill. 46, 47 N. E. 316; Strauss v. Phillips, 189 Ill. 9, 59 N. E. 560.

Before the county court can order the sale of real estate to pay debts, the validity of the claims must be established. McGowan v. Lufburrow, 82 Ga. 523, 14 Am. St. Rep. 178, 9 S. E. 427; 18 Cyc. 680, and cases there cited; 11 Am. & Eng. Enc. Law, 1081, and cases there cited.

Where petition is made for order for sale of real property to pay debts, it must show the essential facts required by statute, including the fact that the personal estate is insufficient. Hadley v. Gregory, 57 Iowa, 157, 10 N. W. 319; 18 Cyc. 1233.

Where such application is made in the ancillary jurisdiction, to pay claims allowed in the domiciliary jurisdiction, the proceedings will be governed by the laws of the domicil where the claims were allowed. 18 Cyc. 1233; McCrary v. Tasker, 41 Iowa, 260; Conger v. Cook, 56 Iowa, 117, 8 N. W. 782; Hadley v. Gregory, 57 Iowa, 157, 10 N. W. 319.

The power of the county courts in these respects is limited by the terms of the statute. No such power existed at common law. Haynes v. Meeks, 20 Cal. 312; Worthy v. Johnson, 52 Am. Dec. 399 and note, 8 Ga. 236; Merrill v. Harris, 26 N. H. 142, 57 Am. Dec. 359; Tucker v. Harris, 58 Am. Dec. 488 and note, 13 Ga. 1; Currie v. Stewart, 27 Miss. 52, 61 Am. Dec. 500; Janes v. Throckmorton, 57 Cal. 368; Pettit v. Pettit, 32 Ala. 288; Wyman v. Campbell, 6 Port. (Ala.) 219, 31 Am. Dec. 677; 11 Am. & Eng. Enc. Law, 2d ed. 1069, note 3.

The claimant was *not a creditor* of the estate. Fields v. Mundy, 106 Wis. 383, 80 Am. St. Rep. 39, 82 N. W. 343; Bond v. Smith, 2 Ala. 660; May v. Parham, 68 Ala. 253; Riser v. Snoddy, 7 Ind. 442, 65 Am. Dec. 740; Bevers v. Park, 88 N. C. 456.

BRUCE, J. (after stating the facts as above). The first point made by the respondent is that the appeal should be dismissed on the ground that the order is not an appealable one, and that the appellants have failed to demand a trial *de novo,* or to specify certain questions of fact

that they desire the supreme court to review, or to make any settled statement, and have failed to enter up any judgment, or to appeal from any judgment. It is argued that the order of the district court was in reality one of the conclusions of law made by that court, and was not an appealable order, and that the appeal, if any, is one which should have been taken under § 7229 of the Codes of 1905, the action being, according to the contention, an equitable one. It is also claimed that even if the action is a law action, there is no settled statement, no notice of intention to move for a new trial, no motion for a new trial, no appeal from any order denying a new trial, and no appeal from any judgment.

We are fully satisfied that the order appealed from was a final order affecting a substantial right made in a special proceeding, and was therefore appealable under § 7225, Rev. Codes 1905. Subdivision 2 of § 7225, Rev. Codes 1905, declares to be appealable a final order affecting a substantial right in a special proceeding. Remedies in the courts of justice are by the Code of North Dakota divided into actions and special proceedings. See Rev. Codes 1905, § 6741. "An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Rev. Codes 1905, § 6742. "Every other remedy is a special proceeding." Rev. Codes 1905, § 6743. It is quite clear to us that the proceeding at bar is not an action under the definition of § 6742, and that therefore it must, under § 6743, be classified as a special proceeding. The proceeding is not *an ordinary proceeding* in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." An ordinary proceeding, as the term is used in the Code, is such a proceeding as was known to the common law, and was formerly conducted in accordance with the proceedings of the common-law courts. Under the modern Codes it seems that it must generally be such a proceeding as is started by the issuance of a summons and results in a judgment which can be enforced by an execution. Hallahan v. Herbert, 57 N. Y. 409 ; Roe v. Boyle, 81 N. Y. 305 ; Hyatt v. Seeley, 11 N. Y. 52 ; Belknap v. Waters, 11 N. Y. 477 ; Re Cooper, 22 N. Y. 67 ; Re Rafferty, 14 App. Div. 55, 43 N. Y.

Supp. 760; Cornish v. Milwaukee & L. R. Co. 60 Wis. 476, 19 N. W.
443; Van Winkle v. Stow, 23 Cal. 458; McNiel v. Borland, 23 Cal.
144; State ex rel. Carleton v. District Ct. 33 Mont. 138, 82 Pac.
789, 8 Ann. Cas. 752; Wildman v. Wildman, 70 Conn. 700, 41 Atl.
1. A special proceeding, on the other hand, is a remedy which is of
statutory origin. Roe v. Boyle, 81 N. Y. 305; Hyatt v. Seeley, 11
N. Y. 52; Re Ryers, 72 N. Y. 1, 4, 28 Am. Rep. 88; Mills v. Thursby,
2 Abb. Pr. 432; Crosby's Estate, 55 Cal. 574, 588; Smith v. Wester-
field, 88 Cal. 374, 26 Pac. 206. Proceedings, indeed, such as those
before us, have repeatedly been held to be special proceedings, and not
actions. Scott's Estate, 15 Cal. 220; Re Joseph, 118 Cal. 660, 50
Pac. 768; Re Burton, 93 Cal. 459, 29 Pac. 36; Deer Lodge County
v. Kohrs, 2 Mont. 66; Burris v. Kennedy, 108 Cal. 331, 41 Pac. 459;
Crosby's Estate, 55 Cal. 574; Ex parte Smith, 53 Cal. 204; Missionary
Soc. v. Fly, 56 Ohio St. 405, 47 N. E. 538; Seward v. Clark, 67 Ind.
289; Carpenter v. Superior Ct. 75 Cal. 596, 599, 19 Pac. 174; Re
Blythe, 110 Cal. 226, 42 Pac. 641; Smith v. Westerfield, 88 Cal. 374,
26 Pac. 206; Pryor v. Downey, 50 Cal. 388, 19 Am. Rep. 656; Re
Burton, 93 Cal. 459, 29 Pac. 36. So, too, it is equally clear that the
order is a final order and affects a substantial right. See Bolton v.
Donavan, 9 N. D. 575, 84 N. W. 357; Ellis v. Southwestern Land Co.
94 Wis. 531, 69 N. W. 363; Re Sullivan, 40 Wash. 202, 111 Am. St.
Rep. 895, 82 Pac. 297. It is an order, not a judgment, for in such
cases the district court enters no judgment. See Rev. Codes 1905,
§§ 7986, 7989.

Being a final order in a special proceeding, no statement of the case
was required. In such cases the statute (Rev. Codes 1905, § 7206) pro-
vides that the clerk of the district court shall transmit to the supreme
court the order appealed from and the original papers used by each
party on the application for such order. These papers, the statutes
provide, must be certified by the clerk of the district court, and no
other certification or attestation is necessary. In such a case, and where
no oral evidence has been taken before the district court, and the order
made by the district court is based entirely on the record of the
county court and the stipulation of counsel, no statement of the case
is necessary. Oliver v. Wilson, 8 N. D. 590, 593, 73 Am. St. Rep.
784, 80 N. W. 757; State ex rel. Minehan v. Meyers, 19 N. D. 805,

817, 124 N. W. 701. We have, at the request of counsel for respond-dent, carefully examined our holding in the case of Re Peterson, 22 N. D. 480, 134 N. W. 751. We find nothing, however, in that case which is antagonistic to the propositions herein advanced. If oral evidence had been taken in the district court, a settled statement of the case might have been necessary, but such was not the fact in the case at bar.

Not only then is the order appealable, but we are at liberty to examine the depositions which are to be found in the record in the case. This is important, as in them we find proof of what we believe to be important, if not necessary, facts, namely, that the decedent was a resident of the state of Iowa, and that there was in Iowa but $200 worth of personal property and proved debts of many thousands of dollars.

Respondent next contends that appellants can have no relief for the reason that their claims were presented to the administrator of the decedent's estate in North Dakota, that there is no record of their approval by him, and that no suit was brought upon them within the period prescribed by § 8105, Rev. Codes 1905. We do not, however, consider these facts to be pertinent. An administrator's act in passing upon a claim is not *res judicata*. In allowing or rejecting any claim he acts merely as an auditor. His allowance or rejection simply means that he is or is not satisfied as to the justice of the claim, but it is in no sense a judicial determination, as he is not vested with judicial functions respecting it. Chambers v. Chambers, 38 Or. 131, 62 Pac. 1013. It was not necessary in this case that the claims should have been proved or adjudicated in North Dakota. They were approved by the court of the principal administration, in Iowa. It was optional with the petitioners and appellants to file their claims either in Iowa or in North Dakota. The heirs and other persons interested in the estate had the right to defend in Iowa as well as in North Dakota.

So, too, the statute of limitations or of nonclaim is not here involved. This is not an attempt to prove claims in North Dakota, but to induce the North Dakota court to sell property and to transmit the funds derived therefrom for the payment of claims properly proved and allowed in another state. Section 5187 of the Rev. Codes of 1905 provides that "when any person having title to any estate, not otherwise limited by marriage contract, dies without disposing of the

estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this Code and the Probate Code, *subject to the payment of his debts.*"  In this clause there is no qualification as to where those debts shall exist, or where they shall have been allowed. Section 8093 of the Code provides: "*All the property of the decedent,* except as otherwise provided for the homestead and personal property set apart for the surviving wife or husband and minor child or children, shall be chargeable with the payment of the debts of the deceased, the expenses of administration, and the allowance to the family, and the property, personal and real, may be sold as the court may direct in the manner hereinafter prescribed."  Section 8096 provides: "The estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and allowance to the family. . . ."  Section 8225 provides: "Upon the settlement of such estate, and after the payment of all debts for which the same is liable in this state, the residue of the personal estate may be distributed and disposed of in manner aforesaid by the county court; or in the discretion of the court, it may be transmitted to the executor or administrator, if any, in the state or country where the deceased had his domicil, to be there disposed of according to the laws thereof."  Section 8226 provides: "If such person dies insolvent, his *estate* found in this state shall, as far as practicable, be so disposed of that all his creditors here and *elsewhere* may receive each an equal share in proportion to their respective debts."  Section 8227 provides: "To this end his *estate* shall not be transmitted to the foreign executor or administrator until all the creditors who are citizens of this state have received their just proportions; and no creditor who is not a citizen of this state shall be paid out of the assets found here, until all those who are citizens have received their just proportions as provided in the preceding section."  Section 8228 provides: "If there is any residue after such payment to the citizens of this state, it may be paid to any other creditors who have duly proved their debts here, in proportion to the amount due to each of them, but no one shall receive more than would be due to him if the whole *estate* was divided ratably among all the creditors as before provided.  The balance may be transmitted to the foreign executor or administrator, or, if there is none, it shall after the expiration of one year from the appointment of the administrator

be distributed ratably among all creditors, both citizens and others, who have proved their debts in this state." Section 8134 provides: "When a sale of property of the estate is necessary to pay the allowance of the family or the debts outstanding against a decedent, or the debts, expenses, or charges of administration, or legacies, or when such sale is for the best interests of the estate and the persons interested in the property to be sold, whether it is or is not necessary to pay the debts or family allowance, the executor or administrator may also sell any real estate as well as personal property of the estate in his hands and chargeable for that purpose upon the order of the county court; and an application for the sale of real property may also embrace the sale of personal property. To obtain an order for the sale of real property, the executor or administrator must present a verified petition to the county court, setting forth the amount of personal property that has come into his hands as assets, and how much thereof, if any, remains undisposed of; the debts outstanding against the decedent, as far as can be ascertained or determined; the amount due upon the family allowance, or that will be due after the same has been in force for one year; the debts, expenses, and charges of administration already approved, and an estimate of what will or may accrue during the administration; the facts showing the sale to be for the best interests of the estate, if the application is made upon that ground; a general description of all the real property except the homestead, of which the decedent died seised, or in which he had any interest, or in which the estate has acquired any interest, and the condition and value thereof; the names of the legatees and devisees, and the heirs of the decedent, so far as known to the petitioner. If any of the matters herein enumerated cannot be ascertained, it must be so stated in the petition; but a failure to set forth the facts showing the sale to be necessary will not invalidate the subsequent proceedings, if the defect be supplied by the proofs at the hearing, and the general facts showing such necessity are stated in the decree. If it appears to the court from such petition that it is necessary to sell the whole or some part of such real estate, for the purposes and reasons mentioned in this section, or any of them, or that such sale is for the best interests of the estate, such petition must be filed, and an order thereupon made directing all persons interested in the estate to appear before the court at a time and place specified,

not less than four, and not more than ten, weeks from the time of making such order, to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the decedent as is necessary, or for the best interests of the estate."

It seems to us quite clear from the foregoing sections of the Code, and especially §§ 5187, 8225, 8226, and 8096, that the legislature fully contemplated and authorized the sale of real estate where such is necessary to pay debts duly proved in a foreign jurisdiction. Our statutes, in short, seem to have adopted the policy which would be chosen by any honest man, and to look upon the property of a decedent as a trust fund to be devoted to the payment of his debts wherever they exist. It is true that every reasonable protection is cast around the local creditor, but in that there is no suggestion of an intent that foreign creditors may be defrauded. Such is in accord with a sound public policy and a common honesty. "We cannot think," says Chief Justice Parker in the case of Dawes v. Head, 3 Pick. 128, "that in any civilized country advantage ought to be taken of the accidental circumstance of property being found within its territory which may be reduced to possession by the aid of its courts and laws to sequester the whole for the use of its own subjects or citizens, where it shall be known that all the estates and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government." An examination of the case of Re Gable, 79 Iowa, 178, 9 L.R.A. 218, 44 N. W. 352, discloses the fact that under similar circumstances, and if the creditors had been in North Dakota and the real estate in Iowa, the Iowa court would have decreed a sale of the real estate and the transmission of the funds to North Dakota. We can hardly believe that the legislature of North Dakota intended that it, its courts, and its citizens should be less honest than those of the state of Iowa. "There is an obligation," says the supreme court of Iowa in the case of Re Gable, supra, "wherever the laws of comity rest, which impels courts to enforce them with an authority not to be disregarded, though it be not prescribed by statute or by the common law. That obligation exists when justice demands authority to be exercised to the end that right may prevail; that property and property rights, domestic rights, and the liberty of the citizens, may be protected and enforced. A court of justice, which is established

526 26 NORTH DAKOTA REPORTS

that justice may be enforced and upheld, can have no more binding obligation resting upon it than that which requires that it shall do justice. . . . Under the law upon the subject, which prevails over the whole Union, all the property of a decedent, including his lands, except a homestead and other exemptions, is subject to the payment of his debts, and is assets for that purpose. Debts must be paid before the assets can be distributed to the heirs, legatees, and devisees, without regard to the place of residence of the creditors. Justice requires that creditors should be paid when they have duly established their claims. Such claims may be established either in the principal or ancillary administration. They will be paid when established in the ancillary administration, if assets sufficient are found within its jurisdiction. If sufficient assets for the payment of debts are not found under the control of the principal administration, and there is under the control of the ancillary administration money assets in excess of the debts proved therein, justice would forbid that such administration should disregard the demands of right, and distribute the assets to the heirs; but as it has not before it the claims of all the creditors, some having been established in the principal administration proceedings, justice demands that the ancillary administration, in response to the demands of comity, transmit the money assets to the principal administrator." See also Davis v. Estey, 8 Pick. 475; Dawes v. Head, 3 Pick. 128; Fay v. Haven, 3 Met. 109; Joy v. Elton, 9 N. D. 444–449, 83 N. W. 875.

We also find no merit in his contention that §§ 8225 and 8226, which impress the estate of a decedent with a trust in favor of creditors, and which provide for the transmission of the residue of the *estate* to the executor or administrator in the state or county of the decedent's domicil, relate only to cases in which the decedent has left a will. It will be noticed, indeed, that the word "administrator," as well as "executor," is used in §§ 8225–8227 and 8228. An administrator "is a person lawfully appointed to manage and settle the estate of a deceased person who has left no executor." Smith v. Gentry, 16 Ga. 31, 32; 1 Words & Phrases, p. 198. A distinction is made in law between an executor and an administrator. See Webster's Dictionary. There is nothing in the sections before us which give any reason for or any intimation of any desire on the part of the legislature that their

provisions shall be confined to cases of testacy. It is also to be noticed that the statutes make use of the word *"estate,"* and not "personal property."

Nor do we believe that there is any merit in the argument that § 8134, Rev. Codes 1905, and which provides that any local creditor may make an application for the sale of real estate if the administrator neglects so to do, covers local creditors merely, or creditors who have proved their claims in North Dakota, and that there is no machinery provided for in cases such as that before us. The legislative intention that the estate shall be impressed with a trust appears to us to be clear. It also appears to us that it was the intention that the rights of foreign creditors who had proved their claims in another jurisdiction should be based rather upon comity than upon the concession of a natural right, and that a wise discretion should be used in relation to the matter. We believe that under such circumstances the omission to provide for the machinery is in no way important, the ordinary machinery of the law being deemed adequate for the purpose.

In this connection it is well to take up the further claim of respondent that upon the death of the deceased the real estate vested in the heirs, and could not be subjected to the payment of debts such as those before us, or to use the words of the petition, that "our statutes, being a rule of property, vested the title in the heirs freed from the creditors' claims after the limitations." Whether this be true generally, it is not for us to determine. It is sufficient for us to say that §§ 3741 and 3742 of the Code have already been construed by this court, and then in the case of Friese v. Friese, 12 N. D. 82, 85, 86, 95 N. W. 446, we find it stated that "property not disposed of by will passes to the heirs, . . . subject to the control of the county court, and to the administrator appointed by the court for the purpose of administration. Rev. Codes 1899, § 3741. Such property is to be distributed subject to the payment of the debts of the intestate. Id. § 3742. Under these sections, the administrator or executor has the exclusive right to the personal property for purposes of administration. Jahns v. Nolting, 29 Cal. 508. 'The whole matter of dealing with the estates of deceased persons is one of statutory regulation, and the policy and intent of our statute very clearly contemplate that property of decedents left undisposed of at death . . . shall, for the purposes of ascertaining

and protecting the rights of creditors and heirs, and properly transmitting the title of record, be subjected to the process of administration in the probate court.' Re Strong, 119 Cal. 663, 51 Pac. 1078. This indebtedness was the property of the deceased, Ludwig Friese, and the statute prescribes the course to be taken for its proper distribution. It is not permissible, therefore, for these plaintiffs to disregard the due administration of the estate, and litigate their rights as heirs or legatees in the first instance in any court other than the county or probate court. The estate of Ludwig Friese must first be subjected to the claims of creditors, before any distribution of it can occur, and it is not the policy of the statute to permit any person claiming decedent's property to take possession of it until all debts are paid. . . . We have seen that heirs or devisees, as such, have no right to decedent's property until his debts are paid. The creditors are the first preferred parties in interest, and until satisfied, heirs or legatees have no enforceable interest. Haynes v. Harris, 33 Iowa, 517."

It is next urged that to lay down the rule announced in this opinion would be highly dangerous, as it would permit the appointment of an administrator in a state in which the deceased had little or no property, and that "fake" claims of all kinds and descriptions might be presented without any notice or chance to defend being given to the local creditors. We do not, however, anticipate any such danger. In the case at bar, the claims of petitioners were presented in the domiciliary court, and where they would naturally be expected to be presented. There can come no harm to the local creditors in this case for the simple reason that there are no local creditors, and the controversy is merely between the heirs and the Iowa creditors. The heirs certainly had an opportunity to defend, and a knowledge of, the proceedings in Iowa. So, too, we do not hold that in every case the local and ancillary administration may be required to transmit all of the funds, or to sell and transmit the proceeds of the real estate, to the domiciliary state. If there are local creditors who have had no legal notice of the proceedings in the domiciliary state, we have no doubt that the court may protect their interests, and that in the same way it may protect such creditors against fraud. It is a question of comity and of sound judicial discretion. Comity and sound judicial discretion would never require the transmission of funds or assets, or the sale of

property, when it would be fraudulent as to local creditors. So, too, the assets would necessarily be transferred to be disposed of according to the laws and the judgment of the domiciliary state and the domiciliary court. If no sufficient notice had been given in that court to the local creditors in the ancillary state, we have no question that the domiciliary court would protect their rights.

We are cognizant of the fact that at common law the real estate of a decedent could not be subjected to the payment of debts. We are, however, dealing with statutes, and not with the common law. Nor have we any fault to find with counsel's definition of the word "comity," and that comity is "a willingness to grant a privilege, not as a matter of right, but out of deference and good will." We, in fact, hold that petitioners have no rights, but are merely entitled to the protection which comity should give, and that our legislature merely recognized such comity. We too **have** examined carefully the cases of Re Gable, 79 Iowa, 178, 9 L.R.A. 218, 44 N. W. 352; Hadley v. Gregory, 57 Iowa, 157, 10 N. W. 319; McCrary v. Tasker, 41 Iowa, 260; Conger v. Cook, 56 Iowa, 117, 8 N. W. 782, which are cited by counsel for respondent in support of the proposition that the Iowa courts under similar circumstances would not grant similar privileges. We, however, construe them otherwise. We have also read 18 Cyc. 1233, 1233-d, 1234-c; and Durston v. Pollock, 91 Iowa, 668, 60 N. W. 221; but with the same result. In 18 Cyc. page 1235, indeed, and after the statements referred to by counsel for the respondent, we find the following: "As a general rule assets remaining in the hands of an ancillary representative after paying the claims of local creditors will be transferred to the place of the domicil for distribution. This rule, however, is not absolute or inflexible, but on the contrary the transfer will or will not be made as the court may deem proper in the exercise of a sound judicial discretion according to the circumstances of the case. In the absence of special circumstances making a local distribution proper, the general rule should prevail, since the distribution, wherever made, must be according to the law of the decedent's domicil, and comity requires that it should be accorded to that jurisdiction; but the court may, even in cases where a transmission of the residue is proper, refuse to so order until the domiciliary representative has given a sufficient bond to secure its proper administration. While there is no question as to the author-

26 N. D.—34.

ity of the court in the ancillary jurisdiction to order a residue of assets in that jurisdiction transmitted to the domiciliary representative, the court of one jurisdiction has no authority over the representative of the other to compel him to bring in such assets, whether it be the court of the domiciliary or of the ancillary jurisdiction." See also cases cited. There is no attempt in the case at bar on the part of the Iowa court to enforce its powers here. It merely petitions the local court to exercise its undoubted powers, and in conformity with justice and with interstate comity.

We have also examined the cases of Smith v. Union Bank, 5 Pet. 518, 8 L. ed. 212; Vaughan v. Northrup, 15 Pet. 1, 10 L. ed. 639; Aspden v. Nixon, 4 How. 467, 11 L. ed. 1059; Stacy v. Thrasher, 6 How. 44, 12 L. ed. 337; McLean v. Meek, 18 How. 16, 15 L. ed. 277; and Security Trust Co. v. Black River Nat. Bank, 187 U. S. 211, 47 L. ed. 147, 23 Sup. Ct. Rep. 52, which are cited by counsel for respondent. We believe, however, that the reasoning and conclusions before pursued and arrived at will show the same to be inapplicable to the case before us. We do not, indeed, find that the decisions mentioned, when carefully examined in connection both with the facts therein disclosed and the law pronounced, are in any way antagonistic to the conclusions herein arrived at.

Finally, counsel for respondent contends that §§ 8286, 8287, and 8288, Rev. Codes 1905, and which, in our opinion, make a trust estate of the property of a deceased person for the benefit of his creditors, only apply where the deceased died insolvent, and that a sale of the real estate can only be ordered under such statutes where there is proof that the entire property of the decedent is insufficient to pay his debts. He asserts that insolvency is not in this case; that it is not set forth as a ground for relief in the petition; and that there is no testimony regarding it in either court. We cannot, however, so hold. The petition alleges that "said Eulalie Lillie owned no real property in the state of Iowa, and the personal property of which she died seised did not exceed in value the sum of $200." It further alleges that claims in excess of $14,150 have been proven and allowed in said state. The answer admits "that the estate of decedent in the state of Iowa does not exceed in value the sum of $200." The record shows real estate in North Dakota of an appraised value of $14,600, with outstanding

mortgages amounting to $4,130, exclusive of interest, and no personal property, and debts in Iowa amounting in all to $20,059.70, exclusive of interest. It would be absurd to state that the Iowa estate is not insolvent, or that the North Dakota and Iowa estates taken together are not in the same condition. We believe that this is all the showing that is required by the statute.

It is also claimed that the liability under the notes to the petitioners Karl W. Kendall and First National Bank of Marion, Iowa, is a joint liability merely as an accommodation maker, and that there is no showing as to the resources of the other makers. We do not, however, deem this fact to be of any importance here. Even if we can, and should, go behind the findings of the Iowa court in this case, which allowed these claims against the estate of the deceased, we can see no reason for criticizing or repudiating that allowance. The mere fact that the deceased signed the notes in question as an accommodation maker, and without consideration, if such be the case, did not release her, and does not now release her estate, from a primary liability to pay them. She signed the notes on their face along with the other makers. The contract as expressed by the terms of the notes is a direct and absolute promise to pay them in full. By so signing the notes she made herself primarily liable, and the payee is not required to first exhaust his remedies against the other parties. "The maker upon the face of the paper, with whatever motive or purpose he may sign it," says the supreme court of California in Auld v. Magruder, 10 Cal. 282, "is bound by the contract which he signs, according to the legal effect and meaning of the words. He cannot vary that meaning by parol. The words import an unconditional promise to pay the payee so much money at a certain time. The law affixes to this unequivocal language its obvious signification. The payor is not permitted to contradict the words by showing that when he promised to pay absolutely, he meant to bind himself to pay conditionally, or on some contingency, or if another did not, or if demand was made and notice given. This contract being his own, and precise in its terms, he must fulfil it according to those terms." This has been the holding of this court. See Northern State Bank v. Ballamy, 19 N. D. 509, 31 L.R.A.(N.S.) 149, 125 N. W. 890. See also § 6495, Rev. Codes. 1905; Inkster v. First Nat.

Bank, 30 Mich. 147; Lord v. Ocean Bank, 20 Pa. 384, 59 Am. Dec. 728.

The order of the District Court is reversed, and the cause is remanded for further proceedings according to law and the conclusions reached in this opinion.

Goss, J., being disqualified, did not participate.