## *In re* ESTATE OF GABLE.

1. **Estates of Decedents:** ANCILLARY ADMINISTRATORS: WHO ARE. Where a resident of Pennsylvania died testate in that state, owning land and personal property there, and also land in Iowa, and executors were there appointed, and creditors residing there established their claims against the estate, and administration was afterwards taken out in Iowa at the request of the executors, to the end that the Iowa lands might be sold for the payment of the debts of the estate, *held* that the Iowa administration was ancillary to that of Pennsylvania. (See opinion for citations.)

2. ———: PRINCIPAL AND ANCILLARY ADMINISTRATIONS: DISPOSITION OF ASSETS. In such case all the Iowa lands were sold, producing a sum far in excess of the claims filed against the ancillary administrator, but the sale was ordered upon a petition which showed a large unpaid indebtedness against the principal administration. *Held* that it was the duty of the ancillary administrator, after paying all just claims filed against him, and the expenses of his administration, to transmit the residue of the assets in his hands to the principal administrator, to be applied upon unpaid claims in Pennsylvania, and that, while the principal administration was unable to meet the just demands against it, the heirs and legatees of the decedent were not entitled to such residue. (See opinion for citations.)

*Appeal from Tama District Court.*—HON. S. H. FAIRALL, Judge.

FILED, JANUARY 30, 1890.

THE heirs, legatees and devisees of John S. Gable, deceased, filed their petition in the district court of Tama county, sitting as a court of probate, praying that the executor of the estate of said deceased, appointed by said court, be ordered to make distribution of the assets in his hands, as required by the will of the testator. An order, as prayed for by the petition, was made. Administrators of the estate, appointed in proceedings in Pennsylvania, claimed to be the principal administration, intervene, claiming the assets asked to be distributed. They appeal to this court.

*C. B. Bradshaw* and *Charles A. Clark*, for appellants.

*Struble & Stiger* and *J. W. Willett*, for appellee.

BECK, J.—I.   There is no dispute as to the controlling facts in the case.   Indeed, there is no real controversy as to any of the facts, the dispute arising wholly upon the law as applicable to the facts. Briefly stated, but with sufficient fulness, the facts in the case demanding consideration are these: John S. Gable, always a resident of Pennsylvania, died in that state August 11, 1881.   He owned property in Pennsylvania and lands of great value in Iowa, some of them situate in Tama county.   He was at the time of his death largely indebted, and, as it now appears, was insolvent, the assets of his estate being sufficient to pay but an inconsiderable portion of his indebtedness.   He left a will devising his property almost exclusively to his wife and children.   The particulars of this disposition of his property by his will need not be stated. The will authorized the executors to sell and convey the real estate, to the end that the estate "be settled up as advantageously and profitably as possible" within four years.   The executors named in the will were discharged, and on the twenty-seventh day of December, 1881, others were appointed by the proper court in Pennsylvania.   At their request an administrator was appointed by the proper court of Tama county, who soon after resigned, and on the eighth day of April, 1882, R. E. Austin was appointed administrator by the same court, and proceeded in the discharge of his duties as such.   It is shown that administration was taken out in this state in compliance with the request and direction of the Pennsylvania administrators, and was intended to be ancillary.   Claims to a large amount were filed against the estate in Pennsylvania, and were paid, so far as the assets were sufficient; but the large portion of the claims after the assets were exhausted

remained unpaid.  Claims were filed against the estate in Iowa, and, upon the petition of the administrator, lands of great value were sold, and the proceeds applied to the payment of the claims filed and proved here.  A large balance remained in the hands of the Iowa administrator, which the petitioners in this case pray may be distributed to the heirs and devisees of the decedent.  The Pennsylvania administrators intervene in this action, claiming that the principal administration in the case was in Pennsylvania, and the Iowa administration was merely ancillary.  They pray that the money assets in the hands of the Iowa administrator may be transmitted to them, to be used in the payment of the debts of the estate which have been or may be duly proved.

II.  The evidence shows, we think, beyond dispute, that the Iowa administration was taken out upon the request of the Pennsylvania administrators, and was intended by them and the Iowa administrator to be ancillary.  The Iowa administrator, in his petition for the sale of Iowa lands, states that debts to the amount of ninety thousand dollars in excess of assets are filed against the estate in Pennsylvania, and that claims against the estate in Iowa to the amount of seven thousand dollars were proved.  It is shown that the Iowa administrator has in his hands more than nineteen thousand dollars after paying claims allowed by the Iowa court, seven thousand dollars being received for rents, and the balance from sales of lands.  There seems to be no doubt that the Pennsylvania claims against the estate constituted the ground upon which the order for the sale of the lands was made.  The petition for the sale is based upon that ground, among others, and there can be assigned no other reason why the court ordered Iowa lands to be sold, realizing nineteen thousand dollars in excess of the Iowa claims.  Unless such was the purpose, the order was improvident and erroneous, in that it required a sale of lands so largely in excess of the demands against the estate.  But we will presume

the existence of facts, in the absence of proof to the contrary, which establish the regularity of the order of sale.

III. We are now to determine what disposition ought to be made of the money assets in the hands of the Iowa administrator, being the proceeds of Iowa lands sold upon his petition, as above stated. The Pennsylvania administrators, who intervene, claim that this money should be transmitted to them to be disbursed in the payment of debts against the estate, duly established in accord with the laws of Pennsylvania. The heirs and devisees, who institute this proceeding by their petition, claim that the money assets in the hands of the Iowa administrator should be distributed to them, and no part of it be applied in payment of Pennsylvania creditors.

IV. The testator was a resident of Pennsylvania, and died in that state. He owned and held personal property there, and was seized of lands situated therein. Administration was first taken in Pennsylvania, and creditors residing there, in accord with the laws of that state, established their claims against the estate. Administration was afterwards taken out in Iowa, at the request of the Pennsylvania administrator, to the end that the lands owned by the testator in Iowa should be appropriated to the payment of the debts of the estate. Under these facts no doubts can be entertained that the Pennsylvania administrator is the principal, and the Iowa the ancillary, administrator. *Chamberlin v. Wilson*, 45 Iowa, 149; Story, Confl. Laws, sec. 518; Whart. Confl. Laws, sec. 627; 3 Williams, Ex'rs [6 Am. Ed.] 1762; *Stevens v. Gaylord*, 11 Mass. 256; *Fay v. Haven*, 3 Metc. 109; *Williams v. Williams*, 5 Md. 467; *Clark v. Clement*, 33 N. H. 563; *Green v. Rugely*, 23 Tex. 539; *Spraddling v. Pipkin*, 15 Mo. 118; *Childress v. Bennett*, 10 Ala. 751; *Perkins v. Stone*, 18 Conn. 270.

We are not required to consider the functions and duties of the principal and ancillary administrations, further than to inquire as to the disposition to be made

of assets in the hands of the latter, after all debts of the estate established therein have been paid. It may here be remarked that the duties of the ancillary administration are not prescribed by statute, and that the common law prescribes those duties in obedience to the obligations of comity existing between independent states. It is true that courts are not commonly considered as bound to obey the laws of comity; that they are enforced through the spirit of friendship, and not in obedience to the requirements of superior law. This is quite true. But there is an obligation wherever the laws of comity rest which impels courts to enforce them with an authority not to be disregarded, though it be not prescribed by statute or by the common law. That obligation exists when justice demands authority to be exercised to the end that right may prevail; that property and property rights, domestic rights, and the liberty of the citizens may be protected and enforced. A court of justice, which is established that justice may be enforced and upheld, can have no more binding obligation resting upon it than that which requires that it shall do justice.

V. What is an ancillary administration? It is subservient and subordinate to the principal administration. The subserviency and subordination is to attain the ends of justice, which is the object and aim of all acts of a court of justice. The terms relate to the objects and ends attained by the administration, not to the methods and practice pursued by the courts having jurisdiction of the administration. Under the law upon the subject, which prevails over the whole Union, all the property of a decedent, including his lands, except a homestead and other exemptions, is subject to the payment of his debts, and is assets for that purpose. Debts must be paid before the assets can be distributed to the heirs, legatees and devisees, without regard to the place of residence of the creditors. Justice requires that creditors should be paid when they have duly established their claims. Such claims may be established

either in the principal or ancillary administration. They will be paid when established in the ancillary administration, if assets sufficient are found within its jurisdiction. If sufficient assets for the payment of debts are not found under the control of the principal administration, and there is under the control of the ancillary administration money assets in excess of the debts proved therein, justice would forbid that such administration should disregard the demands of right, and distribute the assets to the heirs; but, as it has not before it the claims of all the creditors, some having been established in the principal administration proceedings, justice demands that the ancillary administration, in response to the demands of comity, transmit the money assets to the principal administrator.   Story, Confl. Laws, secs. 513, 518; Whart. Confl. Laws, secs. 619, 620; 3 Williams, Ex'rs, 1763, 1767, and notes; 1 Williams, Ex'rs, 424; *Goodall v. Marshall*, 11 N. H. 88; *Low v. Bartlett*, 8 Allen, 259; *Fay v. Haven*, 3 Metc. 109; *Davis v. Estey*, 8 Pick. 475.

VI.   As we have before said, lands now in all the states of the Union, except such as may be exempted by law, are assets for the payment of the debts of a decedent.   They are sold, and the money proceeds are applied to the payment of the decedent's debts.   It is vain to discuss the question whether the avails of land so sold are to be treated as personalty or real estate. The land is converted into money.   The land then ceases to be assets of the estate; the money becomes assets. There is no mystery in changing lands into money. One owning a farm knows he owns and is possessed of so many acres of land.   He sells it, and receives therefor ten thousand dollars in cash.   He then knows he owns no lands, but in the place of his farm he has ten thousand dollars in cash.   He would probably be amused should any one claim that his money was realty, or should be regarded and treated by the law as realty The law provides for the change of the lands of estates into money.   When the money is received, it is personal

property.   It doubtless is true that cases arise where, in order to enforce liens or equities, money proceeds of lands are appropriated as the land would have been appropriated had there been no sale of it.   It appears that there ought to be no doubt, obscurity or mystery as to the character of the money and the appropriation of it to be made.   It is avails of land set apart by the law for the payment of debts of the estate.   The land was converted into money, as shown by the petition filed in the ancillary administration, asking for the sale of the Iowa lands, for the purpose of paying debts proved in both the principal and ancillary administrations.   If there had been no debts, the land would not have been sold, and all the land would not have been sold except to pay the Pennsylvania creditors.   It is now found that, after the ancillary administrator has paid all debts established therein, a surplus remains. To carry out the purpose of the law and the objects for which the land was sold, the balance in the hands of the ancillary administrator must be transmitted to the principal administrator in Pennsylvania.

Our conclusions as to the character of the residuum of the money assets in the hands of the ancillary administrator, and the disposition to be made of it, demand for their support no further argument and no further citation of authorities.   Exhaustive, learned and acute arguments of the respective counsel, and numerous authorities cited by them, bearing upon the questions discussed, need not, therefore, be further considered.

Our conclusions require the decree of the district court to be reversed.   The cause will be remanded to the district court for a decree in harmony with this opinion, directing and requiring the administration appointed in this state to transmit to the principal administrator in Pennsylvania all funds remaining after the payment of all debts proved in the district court, and costs and expenses of administration.

REVERSED.