## In re Estate of John Lane.

**EXECUTORS AND ADMINISTRATORS:** Fees—Agreement With
1   Heirs. The amount of fees allowed to an administrator or attorney becomes quite immaterial when all the heirs enter their free consent thereto,—no rights of creditors being involved.

**EXECUTORS AND ADMINISTRATORS:** Foreign and Domestic—
2   Turning Over Estate. It is within the discretion of a court of this state to refuse to order its own administrator to turn over to a foreign domiciliary administrator of the same estate, against the protest of the heirs, the net amount of the estate in the hands of the resident administrator, it appearing that no claims against the estate were on file with the foreign administrator.

Headnote 1:  24 C. J. p. 991.  Headnote 2:  24 C. J. p. 1126.

*Appeal from Sioux District Court.*—William Hutchinson,
Judge.

February 17, 1925.

Objections to final report of administrator, which were overruled, and the objector appeals.—*Affirmed.*

*Hatley & Van de Steeg,* for appellant Dawson.

*Van Oosterhout & Kolyn, pro se,* and for appellee Scanlan.

*Klay & Klay,* for appellees heirs of Lane.

Albert, J.—John Lane, a bachelor, formerly a resident of Iowa, moved to Chicago, in 1919, where he purchased a residence property. He there died intestate on the 21st day of
1. Executors and January, 1922. One Dawson, of Chicago, was,
administrators: by the Illinois court, appointed administrator of
fees: agreement
with heirs. his estate. He had no property in Chicago ex-

cept the aforesaid residence property. He had personal property in Iowa amounting to approximately $1,000. He formerly owned a piece of land in Iowa, which, prior to his death, he had sold on contract to one Joseph Bary, with a balance due on contract of $20,000 and interest. D. J. Scanlan, of Sioux County, in which county said land lay, on the 15th day of May, 1922, made application, and was duly appointed administrator in Iowa of the estate of John Lane. He proceeded to administer on the same, and made his final report therein at the September, 1923, term of the district court. He had an order of court directing him to turn over the net proceeds of this estate to the Chicago administrator. This order was never carried out. On the 10th day of November, 1923, the Chicago administrator filed objections to the final report of the Iowa administrator. The objections filed by him go to the amount of fees allowed the Iowa administrator, and also those allowed to his attorneys, and contain an application that the net proceeds of said estate be turned over to the Chicago administrator. In these proceedings, attorneys appear for all the heirs in said estate, and dictate the following into the record:

"We appear for all the heirs of John Lane, deceased, and on their behalf we say that we are satisfied with the fees allowed by the court, in its order of May 15, 1923, to the administrator and his counsel."

Objection is made by the Chicago administrator, and he still insists, in this court, on his objection to these fees. Of what interest it is to him, we are unable to determine; and what the amount of the fees is, is a matter of little concern to this court, in the light of this admission in the record. In other words, it is the right of the heirs of any estate to pay to the administrator or his attorneys such fees as are satisfactory to them; and whatever they may consent to or agree upon is of no concern to anyone else, where no rights of creditors are involved.

It appears that the house in Chicago, for which Lane paid $7,500, was occupied by Mrs. Cahill, a distant relative, with whom the deceased was boarding. She, by correspondence, took up the status of this matter with friends in Sioux County, claiming that she had an oral understanding with the deceased

that she was to have this house upon his death; and suggested that she would like to settle with the heirs, as she was unable to establish her oral contract, and that she would pay the funeral bill; amounting to something like $900, and also an amount advanced by Scanlan to Lane, of approximately $1,100, if the heirs would allow her to have the property.

At the instigation of Mrs. Cahill, the administration was taken out in Chicago. The Iowa administrator paid the funeral expenses, and also the Scanlan claim of $1,100, and several other claims, in the administration in Iowa. This woman instituted proceedings in Chicago, which resulted in a decree giving her the property in Chicago. In the proceedings there was somewhere between $500 and $600 expense taxed against the estate; and there seem to be no other debts unpaid against the estate in Chicago.

The Chicago administrator insists that the net proceeds of this estate should be turned over to him for final distribution. It might be said, however, that the Chicago administrator and attorney—which attorney, by the way, was the same attorney who acted for Mrs. Cahill in securing the judgment giving her the residence property in Chicago—claim that they were entitled to compensation, which they think ought to be $3,000. The district court approved the final report as made, and the administrator's and attorney's fees; and further finds that it would not be to the interest of the heirs to have the estate transferred to Chicago; denies the application to transfer the same; and further provides that "leave is given the Chicago administrator to file in this court a statement of court costs, attorney fees, and administrator fees, duly authenticated, the same to be submitted to this court for further consideration for allowance thereon, as may be found to be meet and proper."

2. EXECUTORS AND ADMINISTRATORS: foreign and domestic: turning over estate.

Much stress is laid by the appellants upon the case of *In re Estate of Gable,* 79 Iowa 178, with the claim that, under that case, the court here has no discretion, but must transfer the funds to the Chicago administrator. We do not so read the case. It is to be noted in that case that the domiciliary administrator was an officer of the court in Pennsylvania, which state was the residence of the deceased. Through him, as such admin-

istrator, application was made for the appointment of the administrator in Tama County. The deceased in that case was heavily indebted, and many claims were filed against his administration in Pennsylvania. Therefore, there was, among other reasons, a cogent one for transferring the funds to the Pennsylvania court, to the end that his creditors might be paid.

In the instant case, however, there are no creditors of the estate, or at least no claims filed in the estate of the deceased Lane under the Chicago administration. The question of the transfer, under such conditions, is, in our opinion, a matter for the court having the administration in charge. It stands wholly upon the comity between states; and where there is a valid reason for transfer, ordinarily, it will be transferred.

Among the many cases involving this question, the leading case, and probably the fairest statement of the rule, was made by Justice Story, in *Harvey v. Richards,* 1 Mason 381 (11 Fed. Cas. 746, Fed. Case No. 6184), the substance of which is that, where there are two administrations of a single estate, one in the place of the domicile of the testator or intestate, and the other in a foreign jurisdiction, the question whether courts of the latter will decree distribution of the assets collected under the ancillary administration or remit to the jurisdiction of the domicile, is not one of jurisdiction, but of judicial discretion, dependent upon the circumstances of the particular case.

In *Welles's Estate,* 161 Pa. St. 218 (28 Atl. 1116), it is said that, where there are no domiciliary creditors, and the heirs desire and ask for a distribution in the ancillary jurisdiction, it will be granted. To the same effect, see *Matter of Braithwaite,* 19 Abb. N. Cas. 113; *Dent's Appeal—Adlum's Est.,* 22 Pa. St. 514.

In *Cassilly v. Meyer,* 4 Md. 1, it is held that, where all the legatees and parties having any interest in the assets are before the court, and no propriety or necessity for transferring the property to the domiciliary jurisdiction was shown, and it appears that a transfer would only be productive of delay and further expense, it will be distributed in the court of ancillary administration. See, also, *Succession of Gaines,* 46 La. Ann. 252 (49 Am. St. 324).

24 Corpus Juris 1126, Section 2700, holds that such transfer

will or will not be made, as the court may deem proper, in the exercise of sound judicial discretion, according to the circumstances of the particular case.

Under the record made in this case, in view of the fact that all of the heirs of this estate are appearing in this court by attorneys, and asking that distribution be made by the court of this state, under the light of the above rules, we can see no reason why this fund should be transferred to the Chicago administrator. Hence the district court did not abuse its discretion. Whatever claims they may have for costs, if any, in this administration, have been properly taken care of by the order of the district court. Therefore, the order of the district court made in this case is affirmed.—*Affirmed*.

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.