121 N.W.2d 504 (1963)
In the Matter of the ESTATE of Elizabeth HUTCHISON, Deceased.
H. R. MARTIN, Ancillary Administrator,
Rex B. Gilchrist, Robert J. Gilchrist, Virginia G. Kuncl, Mary G. Spurrier, Margaret Hopkins, Genevieve Hendrickson, Edna Behling, Objectors-Appellees,
v.
Donna M. SIMONS, Domiciliary Administratrix of the Estate of Elizabeth Hutchison, now Pending in the Superior Court of the State of California, and Donna M. Simons as Heir, and Alice E. Lawless, Executrix of the Estate of George M. Lawless, Jr., One of the Heirs, Resistors-Appellants.
No. 50972.
Supreme Court of Iowa.
May 7, 1963.
*505 Pasley, Singer & Seiser, Ames, for resistors-appellants.
Judisch & Judisch, Ames, for ancillary administrator.
Mahoney, Jordan, Statton & Smith, Boone, for objectors-appellees.
THOMPSON, Justice.
Two questions are presented by this appeal: first, did the trial court have jurisdiction to make its order for distribution of the proceeds of the sale of certain real estate directly to the heirs; and second, was the order right on the merits.
Involved in the first question are two conflicting orders made by different judges of the Story District Court. There is no dispute as to the facts involved. Elizabeth Hutchison died intestate, a resident of California, on November 28, 1960. Donna M. Simons was appointed administratrix of her estate by the California court having jurisdiction. On April 18, 1961, the domiciliary administratrix made application to the Story District Court for the appointment of an ancillary administrator, alleging that the decedent at the time of her death owned certain farm lands and personal property in Iowa. H. R. Martin of Ames was appointed ancillary administrator and duly qualified. The probate inventory as filed by the ancillary administrator showed that there were 29 heirs of the decedent, of whom 13 resided in Iowa, 9 in California, and the remaining 7 in other states. The application filed by the domiciliary administratrix listed only 13 all told, of whom only five were listed as resident in Iowa.
The inventory of the ancillary administrator also showed personal property of the value of approximately $1700.00 and 150 acres of farm land in Story and Boone Counties, valued at $30,100.00. All the property was sold to pay debts under proper orders of the court.
On July 30, 1962, the ancillary administrator made application to the court, reciting *506 that the California administratrix had requested him to deliver the assets in his hands to her for final distribution in the California estate; and he asked orders in regard thereto. The trial court thereupon entered its order forthwith. Since the order is important on both questions involved in this appeal, we set it out so far as material herewith.
"That the said Administrator is hereby directed to pay the net proceeds from this estate over to Donna Simons, Administratrix of the Estate of Elizabeth Hutchison now pending in the Superior Court of the State of California In and For Los Angeles County and take her receipt therefore and such method of distribution shall become final if objection thereto is not filed by 10:00 o'clock A.M., on the 20th day of August, 1962.
"That the said application shall be set down for hearing at 10:00 o'clock A.M., on the 20th day of August, 1962 in the Court House at Nevada, Story County, Iowa and that notice thereof shall be given by sending by United States certified mail a true copy of said Application and a true copy of this Order 15 days prior to the date set for hearing thereon to all of the heirs named in the second amendment to Probate Inventory, by posting a true copy of said application and this order on the bulletin board in the Court House at Nevada, Story County, Iowa, 15 days prior to said date for said hearing and if the Administrator has knowledge of the death of any of said heirs such notice shall be sent to such decedent's personal representative or attorney therefor(e)." Sic.
No objections were filed on or before August 20, 1962, and no further order was made or hearing had until September 18 next, when objections were filed by certain Iowa heirs, who are now the appellees here. All parties thereupon appeared, and a hearing was had on September 26th which resulted in an order directing the Iowa administrator to pay over the proceeds of the sale of the personalty to the California administratrix; but also directing that the funds remaining after sale of the real estate be distributed directly to the heirs by the Iowa administrator. From this order so far as it relates to distribution of the funds from the sale of realty the California administratrix and certain heirs appeal.
I. It is vigorously contended by the appealing parties, whom we shall hereafter refer to as the resistors, that the trial court was without jurisdiction to change its first order, which is set out above. The first order was made by a different judge than the one who finally heard the objections and the resistance and made the order from which the appeal is taken. However, no legal complaint is based on the difference in judges; and in fact, none could be. It was the same court, and it is the actions of the court which are important. Kuiken v. Garrett, 243 Iowa 785, 792, 793, 51 N.W.2d 149, 154, 41 A.L.R.2d 1397; Richman v. Supervisors of Muscatine County, 77 Iowa 513, 524, 42 N.W. 422, 426, 4 L.R.A. 445, 14 Am.St.Rep. 308.
The resistors contend that the order of July 30 became a finality by its terms when no one appeared by August 20 to object. The judge who made the original order set forth above, was apparently following the procedure outlined by Rule 5 previously adopted by the judges of the 11th Judicial District, which includes Story County. This rule provides for similar procedure in the case of applications for fees in probate matters, specifying that when fees of $1,000 are asked or allowed, upon allowance being made notice shall be given as prescribed, and that such fees will become final if no objection is filed by the time fixed. However, no fees were specifically asked in the application of the Iowa administrator for orders as to distribution; and in any event we do not approve this method of procedure. It is as if, upon the filing of a petition in a law or equity action, a judgment or decree should be entered forthwith, with leave to the defendants to file objections within a specified time and *507 the judgment or decree to become final if none were lodged. It has the effect of placing the burden upon the adverse party to set aside the order. The better procedure is to set the application for hearing on a given date, with the manner of notice specified, and with no order to be entered until after the date set for hearing.
But in any event we do not think the order became such a finality that it could not be attacked under the circumstances here. When the date fixed arrived, no objections were on file. But no further order was made; no hearing was had; and nothing was done by the administrator before the objections were lodged on September 18th. The governing rule is laid down in 30A Am.Jur., Judgments, section 203, pages 283-284. We quote: "Failure by a party entitled to a default judgment to move for such judgment promptly upon accrual of the default, or at least an unreasonable delay in doing so, is ordinarily held to constitute a waiver of the right to such judgment, but there are cases in which it is held that a mere delay does not constitute a waiver. In any event, if a party, after the expiration of the time expressly granted for the filing of a pleading against him, suffers further time to elapse without taking any action with respect thereto, and in the meantime the pleading is served and filed, a judgment by default may not be entered for failure to file the pleading." We quoted this with approval in City of Des Moines v. Barnes, 237 Iowa 6, 11, 20 N.W.2d 895, 897. It governs the present situation.
The resistors cite In re Estate of DePenning, 244 Iowa 690, 58 N.W.2d 9, and other authorities which they believe support their contention that the order of July 30 became final when no one appeared to object to it by August 20, the prescribed date. But these are cases in which a notice had been given and a hearing had upon the applications. Without taking the space required to give each of the cited cases a detailed analysis, we hold that none of them reach the point involved here. If a further order had been secured after August 20, and before objections were filed, there would be good reason for holding that the matter had become a finality and could be attacked only by appeal. But we are unwilling to construe the order of July 30 as something which required only failure to object within the allotted time to become such a finality that nothing more was required. We think it was still subject to the rule quoted above.
It should also be noted that after the objections were filed, all parties promptly appeared and a hearing was had on September 26, from which came the order now the subject of this appeal. This leads to the conclusion that this ruling of the trial court, through Judge Schaupp, might be supported under R.C.P. 236, 58 I.C.A., which allows 60 days for setting aside defaults. The objections asking that the first order be set aside were filed well within the 60 day period, and since all parties appeared the ruling was not made ex parte. The court apparently did not so consider the matter, however, and we give it no further attention. We hold that the order of July 30 had not become such a finality that it could not be attacked under the circumstances shown here, and the court had jurisdiction to consider the objections.
II. The second assigned error challenges the ruling on the merits. The resistors contend that the trial court was bound to order the Iowa administrator to forward all funds remaining in his hands to the domiciliary administratrix in California; and that the court erred in directing distribution by the Iowa fiduciary. The general rule is thus stated in 34 C.J.S. Executors and Administrators § 1006, page 1255: "Distribution of Estate
"The court may in its discretion order that the residue of assets remaining in the hands of an ancillary representative after paying the claims of local creditors be retained and distributed by him instead of being transmitted to the principal representative, and in a number of cases it has been held that under the circumstances of *508 the particular case a retention of the assets was proper."
The rule gives the trial court discretion in directing distribution by the ancillary administrator, either by forwarding the funds in his hands to the primary administrator or by making distribution directly to the heirs entitled thereto. The resistors' position must depend upon a claim that this discretion was abused. As the governing rule and the cases point out, this must be determined by the facts of each case.
The resistors rely much upon Estate of Gable, 79 Iowa 178, 44 N.W. 352, 9 L.R.A. 218. There the primary administration was in Pennsylvania, with ancillary administration in Iowa. There were debts in Pennsylvania amounting to more than the value of the estate there; while the Iowa administration held a considerable sum above any indebtedness here. Under these circumstances we held it was error for the probate court to order distribution to the heirs; that the net assets should be forwarded to the Pennsylvania fiduciary to pay the debts, with any overplus to be distributed by him. We recognized that the matter is one of comity between the states, but determined that under the circumstances shown there was an imperative reason for insisting that the funds should be sent to the locus of the principal administration where the rights of the creditors might be protected. The real result of this case is a holding that the trial court abused its discretion in ordering distribution by the ancillary administrator.
In the later case of In re Estate of Lane, 199 Iowa 520, 202 N.W. 244, we followed the rule laid down in 34 C.J.S. Executors and Administrators § 1006, page 1255, quoted above. We stated the rule thus: "* * * the question whether courts of the latter (the ancillary jurisdiction) will decree the distribution of the assets collected under the ancillary administration or remit to the jurisdiction of the domicile, is not one of jurisdiction, but of judicial discretion, dependent upon the circumstances of the particular case." Loc.cit. 199 Iowa 523, 202 N.W. 245.
We must determine whether the circumstances shown here were such that the trial court acted within its fair discretion in ordering distribution of the funds realized from the sale of real estate by the Iowa administrator. The court did in fact direct that the proceeds of personal property be forwarded to the domiciliary administratrix; but no appeal is taken from this part of the order and we do not consider it. We find that the application for orders made by the Iowa fiduciary, which resulted in the order of July 30, recites that "the Administratrix of said estate now pending in the State of California asks that your administrator deliver to her for final distribution in the said California estate the assets of this estate." The emphasis in the quotation is supplied by us, for a reason which we shall later endeavor to make clear.
The objections lodged against the order of July 30 asserted that the California estate is solvent and adequate to pay all claims and expenses chargeable therein. The resistors formally deny this, "and affirmatively assert that it has not yet been determined what claims, costs and expenses there will be in the Domiciliary Administration of this estate." They also assert affirmatively that unless some extraordinary reason appears to the contrary excess funds must be transferred to the domiciliary administration for distribution. Again we emphasize the word "distribution."
The application of the California administratrix for ancillary administration in Iowa listed 13 heirs of the decedent, of whom only five were residents of Iowa. The probate inventory in the ancillary estate shows 29 heirs, of whom 13 are resident in Iowa, 9 in California, and 7 in other states.
The record upon which we must make our determination whether the trial court abused its discretion is a meager one. *509 Upon the September 26th hearing upon the objections to the order of July 30 and the resistance to the objections, at which all parties to this appeal appeared by counsel, no evidence was taken; in fact, so far as the record shows, no one thought it important to offer any. The court's record shows only that its determination was made "upon inspection of the records and file and after listening to the arguments of counsel." In this situation we start with a presumption of the regularity of the order now challenged, in the absence of proof of the existence of facts to the contrary. In re Estate of Gable, supra, loc. cit. 79 Iowa 180, 181, 44 N.W. 352, 353. This means, as applied to the existing situation, that the burden was upon the domiciliary administratrix to show that the California estate was not solvent, or that the matter was at least doubtful because of unsettled or unknown claims and expenses. These were facts peculiarly within her knowledge and could readily have been shown by her.
III. But we think also that there is a showing that the only purpose of forwarding the funds to California was for "distribution." Such was the reason given in the application of the Iowa administrator, as quoted above. So in the resistance, it is asserted that the excess funds should be transferred to the domiciliary administratrix "for distribution." We quote from Restatement, Conflict of Laws, section 303b: "The process of realizing the movable assets of an estate and paying out of them debts and other claims against the estate is administration. The division of what remains is distribution." In Rogers v. Gillett, 56 Iowa 266, 268, 9 N.W. 204, 205, we quoted with approval from 1 Bouvier's Law Dictionary, 438: "Distribution has been defined to be the `division of an intestate's estate according to law.'" Many authorities to the same effect are cited in 13 Words and Phrases, Distribution, pages 14-18 inclusive. So it appears here that it was for purposes of "distribution" the primary administratrix was asking the ancillary administrator to make over the Iowa estate to her; and it was for the same purpose that the resistors asserted the funds on hand should be forwarded to her. But this implies an estate ready for closing with only the division among the heirs remaining to be made.
IV. There is not only this consideration, but the further fact that so far as the record shows, the California administratrix has recognized only five of the 13 Iowa heirs. This might mean that the remaining eight would be put to the expense and uncertainty of proving their heirship in California, and in itself is a consideration supporting the exercise of the court's discretion in ordering distribution here. That local heirs may be denied their rights in a foreign jurisdiction or compelled to resort to the courts there for their protection is a circumstance of some weight at this point.
In fact, this thought is supported by Section 633.52, Code of 1962, I.C.A., which we set out: "Removal of propertypayment of claims In such cases, the court or judge may require payment of all claims filed and allowed or proved belonging to residents of this state, and of all legacies or distributive shares payable to such residents, before allowing the estate to be removed from the state." This applies to the situation in which a foreign administrator has been also appointed as ancillary administrator in Iowa; but it shows the public policy of the state to protect local heirs. Logically, the court's order in the instant case is within the intent and purpose of the statute just set out.
We are unable to say that the trial court abused its discretion by ordering distribution of the Iowa assets by the local administrator.
Affirmed.
All Justices concur.